STATE OF CONNECTICUT *v.* DANIEL A. RAMSUNDAR
(12843)

PETERS, C. J., HEALEY, SANTANIELLO, CALLAHAN and HULL, Js.

Argued March 3—decision released June 9, 1987

*Joseph P. Secola,* for the appellant (defendant).

*Steven M. Sellers,* assistant state's attorney, with whom, on the brief, was *Kevin P. McMahon,* assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant was charged in an information with having committed the crime of arson in the first degree in violation of General Statutes § 53a-111.[1]

---

[1] "[General Statutes] Sec. 53a-111. ARSON IN THE FIRST DEGREE: CLASS A FELONY. (a) A person is guilty of arson in the first degree when, with intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied; or (2) any other person is injured, either directly or indirectly; or (3) such fire or explosion was caused for the purpose of collecting insur-

He pleaded not guilty and elected a jury trial. He was found guilty as charged by the jury and was subsequently sentenced by the trial court to a term of ten years imprisonment. The defendant has appealed claiming that the trial court erred by: (1) failing to suppress both in-court and out-of-court identifications; (2) admitting into evidence his prior misconduct, his conviction for harassment[2] and his violation of probation; and (3) commenting unfairly on the evidence in its instructions to the jury. We find no error.

The jury could reasonably have found the following facts: On October 17, 1984, at approximately 11 p.m., brothers Steve and Kenneth Dacunha noticed a fire in the rear yard at 41 Woodmere Road in West Hartford, across the street from Kenneth's home. The two men ran to the scene and observed flames about two feet in height, confined to a strip of ground approximately 18 inches wide and 20 to 30 feet in length. Kenneth smothered the flames with his jacket and called the West Hartford fire department. While awaiting the arrival of the firemen, the two inspected the area of the blaze by flashlight. They smelled an odor of gasoline and saw a strip of liquid extending from a burned area of ground across the driveway to an exterior wooden porch at the rear of the house. They also observed that the rear porch was totally saturated with gasoline.

Shortly thereafter, police and fire officials arrived at the scene. They roused the occupants of the house,

---

ance proceeds for the resultant loss; or (4) at the scene of such fire or explosion a peace officer or firefighter is subjected to a substantial risk of bodily injury."

[2] "[General Statutes] Sec. 53a-183. HARASSMENT: CLASS C MISDEMEANOR. (a) A person is guilty of harassment when: (1) By telephone, he addresses another in or uses indecent or obscene language; or (2) with intent to harass, annoy or alarm another person, he communicates with a person by telegraph, mail, or any other form of written communication, in a manner likely to cause annoyance or alarm; or (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm."

Olive Crompton and her daughter, Denise, and conducted an investigation. Deputy Chief Matteo Pascarelli of the fire department suspected arson. He testified that he had observed a "trailer"[3] of gasoline extending across the driveway to the back porch and that the back porch was "pretty well covered" with gasoline. He opined that had the fire reached the back porch it would have ignited the house and developed into a "major working fire" within ten minutes. He also testified that if the fire had reached the house it would have blocked access from the second floor to the first floor and prevented escape by way of the rear door. Deputy Chief Fire Marshall Richard Kane confirmed the fact that the fire had been deliberately set.

The occupants of the house, the Cromptons, were tenants. The house was owned by Lee Rice and was for sale. Prior to renting the house to the Cromptons, Rice, who had been romantically involved with the defendant since 1980, had lived there with him for approximately one year. The defendant was familiar with the house and had made various repairs to it, including repairs to the rear porch. After Rice had rented the house to the Cromptons, she and the defendant had moved to Rowe Avenue in Hartford where they continued to live together until early in 1984.

On February 12, 1984, Rice terminated her relationship with the defendant because he had misappropriated $609 of her money, which she had earmarked for a mortgage payment on her West Hartford house. The defendant, who was upset and angry that Rice had ended their affair, moved out of the Rowe Avenue house the next day. Thereafter, the defendant harassed Rice in a misguided effort to revive their romantic relationship. On October 18, 1984, the day following the

---

[3] A trail of accelerant, gasoline in this case, is called a "trailer" by arson investigators.

fire the defendant telephoned Rice and, laughing, said, "try and sell that house now."

As a result of an investigation, during which the defendant was identified as having purchased gasoline in a container at a Hartford gasoline service station on the night of either October 16 or 17, 1984, he was arrested and charged with arson in the first degree.

## I

The defendant first claims that the trial court erred by failing to suppress both in-court and out-of-court identifications by two witnesses, Patricia Parrott and Tammey Arnett. He contends that their identifications of him resulted from an unnecessarily suggestive procedure and were unreliable, and that the admission of their testimony violated his federal and state constitutional rights to due process.[4] We disagree.

The following testimony was elicited relating to the issue of the identification of the defendant by Parrott

---

[4] The fourteenth amendment to the United States constitution provides: "Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Article first, § 8, of the Connecticut constitution provides: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by indictment or information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. No person shall be held to answer for any crime, punishable by death or life imprisonment, unless on a presentment or an indictment of a grand jury, except in the armed forces, or in the militia when in actual service in time of war or public danger."

and Arnett: In October, 1984, Parrott was employed as a cashier at the self-service island of an Exxon service station located at the corner of Park Street and Prospect Avenue in Hartford. Arnett was a friend of Parrott's, often visiting Parrott and keeping her company in the cashier's booth during the evening hours. On October 23, 1984, while conducting a canvass of area service stations in connection with the investigation of the fire at 41 Woodmere Road, Detective Joseph Benequisto of the West Hartford police department interviewed Parrott and Arnett. During the course of the interview, he showed them a single police "mug shot" which was a front and side view of the defendant. He then inquired whether the man depicted in the police photograph had purchased gasoline in a container at the station during the previous week. At that time neither Parrott nor Arnett was able to identify the person shown in the photograph.

Two days later, however, on October 25, 1984, when the defendant drove into the same Exxon station to purchase gasoline for his automobile, both Parrott and Arnett immediately recognized him as the man who had purchased gasoline in a container late in the evening on either October 16 or 17, 1984. Parrott and Arnett both testified that when they saw the defendant the second time, they recognized and remembered him because of his distinctive appearance.[5] As the defendant left the service station on October 25, 1984, Parrott wrote down the number of the temporary registration marker on his automobile and called the West Hartford police.

Later Parrott and Arnett gave statements to the police identifying the driver of the automobile on October 25, 1984, as the same man who had purchased gaso-

---

[5] The defendant does present a rather distinctive appearance. He is of Indian descent, is quite tall, has very dark skin, abundant white hair and a prominent nose.

line in a container at the Exxon station the previous week. Subsequently, at trial, both Parrott and Arnett positively identified the defendant as the driver of the automobile on October 25, 1984, and as the person who had purchased gasoline in a container on October 16 or 17, 1984.

"In determining whether identification procedures violate a defendant's due process rights, the required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive, and second, if it is found to be so, it must be determined whether the identification was nevertheless reliable based on an examination of the 'totality of the circumstances.' " *State* v. *Theriault,* 182 Conn. 366, 371–72, 438 A.2d 432 (1980); *State* v. *Cubano,* 203 Conn. 81, 93, 523 A.2d 495 (1987); *State* v. *Collette,* 199 Conn. 308, 310, 507 A.2d 99 (1986); *State* v. *Hinton,* 196 Conn. 289, 292–93, 493 A.2d 836 (1985).

In this case, the trial court found that the display of a single photograph of the defendant by Benequisto, coupled with his inquiry, was unnecessarily suggestive. See *State* v. *Evans,* 200 Conn. 350, 355–56, 511 A.2d 1006 (1986); *State* v. *Collette,* supra. The state does not, on appeal, dispute that finding. We must, therefore, consider whether, based on an examination of the "totality of the circumstances," the identifications were nevertheless reliable. *State* v. *Austin,* 195 Conn. 496, 499, 488 A.2d 1250 (1985).

The factors to be considered in determining the reliability of an identification subsequent to a suggestive identification procedure "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time

between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Manson* v. *Brathwaite,* 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *State* v. *Cubano,* supra, 95; *State* v. *Collette,* supra, 311 n.3; *State* v. *Hinton,* supra, 295–96.

Since neither Parrott nor Arnett was a victim of the arson in question or a witness to its actual occurrence, an analysis of the circumstances of their identifications of the defendant does not fit neatly into the *Manson* matrix of factors normally considered in determining reliability. The factors considered in *Manson,* however, are not required to be present seriatim for an identification to be found reliable. *United States* v. *Merkt,* 794 F.2d 950, 958 (5th Cir. 1986), cert. denied, 480 U.S. 946, 107 S. Ct. 1603, 94 L. Ed. 2d 789 (1987); *United States* v. *Woolery,* 740 F.2d 359, 360–61 (5th Cir. 1984), cert. denied, 469 U.S. 1208, 105 S. Ct. 1172, 84 L. Ed. 2d 322 (1985). We must examine the circumstances that did exist and determine on the whole whether any suggestiveness in the identification procedure created a very substantial risk of misidentification. *United States* v. *Merkt,* supra; *United States* v. *Woolery,* supra; *State* v. *Fullwood,* 193 Conn. 238, 245, 476 A.2d 550 (1984).

In this instance we think that it did not. Although neither Parrott nor Arnett recognized the person in the photograph when it was displayed to them by Detective Benequisto on October 23, 1984, both indicated, at that time, that the subject of the photograph looked familiar, and both expressed the thought that they had previously seen the man depicted. Parrott also recalled, when interviewed by the detective, that someone had recently purchased gasoline in a container, but she could not be sure whether he was the man shown in the photograph.

At trial, however, both Parrott and Arnett were positive of their in-court identifications of the defendant.

They testified that on seeing him for a second time on October 25, 1984, their memories were triggered and they recalled his initial visit to the station during the middle of the previous week. Both said they were able to remember the defendant clearly because of his distinctive appearance and because both thought it strange that anyone would purchase gasoline in a container late at night in October. While they also realized that the defendant was the person shown in the police photograph, both clearly possessed a stronger, independent recollection of the defendant from the viewing of his person on the night of their first encounter. The trial court found corroboration for these independent recollections on the part of the witnesses in the fact that there was a "lack of similarity" between the defendant's appearance in the photograph displayed and his corporeal appearance. The trial court noted that the photograph shown to the witnesses did not reveal the "highlights of the defendant's skin coloring, nor show the whiteness of [his] hair." See *State* v. *Miller,* 202 Conn. 463, 474, 522 A.2d 249 (1987); *State* v. *Evans,* supra, 355.

Further, it appears from the record that the witnesses' recollection of the defendant's appearance was not based on fleeting glances. On both occasions when Parrott and Arnett observed him, he was in close proximity for some minutes and they "[got] a good look at him" in the well lighted self-service area. While he was not the subject of close scrutiny on the first occasion, Parrott and Arnett testified that their attention was drawn to him to a certain extent because business was slow at the time and because his purchase was somewhat unusual.

We conclude, therefore, that although "we examine the legal question of reliability with exceptionally close scrutiny and defer less than we normally do to the related factfinding of the trial court"; *State* v. *Gordon,*

185 Conn. 402, 416, 441 A.2d 119 (1981), cert. denied, 455 U.S. 989, 102 S. Ct. 1612, 71 L. Ed. 2d 848 (1982); the trial court in this instance could reasonably have found that the corrupting influence of the photograph was minimal and that the identification procedure did not result in a very substantial likelihood of irreparable misidentification, and that the identifications were sufficiently reliable to be considered by the jury.[6]

"The exclusion of evidence from the jury is, however, a drastic sanction, one that is limited to identification testimony which is manifestly suspect." *Harker* v. *Maryland,* 800 F.2d 437, 443 (4th Cir. 1986). Absent a very substantial likelihood of irreparable misidentification, "[w]e are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." *Manson* v. *Brathwaite,* supra, 116. There was no error in the admission of Parrott's and Arnett's identification testimony.

## II

The defendant next complains that the trial court erred in admitting evidence of his prior misconduct and his convictions of harassment and violation of probation.

At trial, the state was allowed to introduce evidence, through the testimony of Rice and several other witnesses, that the defendant had been harassing Rice since she had terminated her relationship with him. The testimony revealed that at various times over a period of months the defendant had slashed the tires on Rice's

---

[6] The trial court commented, in fact, that the identification testimony of Parrott and Arnett "rings with reliability." We agree.

automobile, put sugar in the gas tank, and caused it damage by deliberately ramming it with his automobile. He had also, among other things, stolen her mail, threatened her, followed her, and annoyed her with constant telephone calls, both at home and at her place of employment. Further, he had made disturbing telephone calls to Rice's mother, sister, friends and associates. He had admitted his conduct to Rice and to other witnesses who had testified to it at the trial.

The trial court instructed the jury, during the course of the trial and again in its final charge, that testimony concerning the defendant's misconduct prior to the date of the fire was not admitted into evidence to show that the defendant was possessed of a bad character, or to demonstrate that he had a propensity to commit crimes or to behave poorly. The trial court made it abundantly clear that the only purpose for which the evidence was admitted, and the only purpose for which it could be utilized, was to prove the defendant's state of mind in regard to Rice on October 17, 1984, as evidence of his possible intent to damage or destroy her property and his motive for doing so.

Intent is an element of the crime charged and as such was required to be proved by the prosecution beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 361, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Pellegrino,* 194 Conn. 279, 294, 480 A.2d 537 (1984). "Motive is not an element of the crime charged, and the state is under no obligation to show a motive for the accused to commit the crime charged." *State* v. *Annunziato,* 169 Conn. 517, 530, 363 A.2d 1011 (1975); *State* v. *Rathbun,* 74 Conn. 524, 529, 51 A. 540 (1902). Such evidence is, however, important. *State* v. *Harris,* 182 Conn. 220, 224, 438 A.2d 38 (1980). "It strengthens the state's case when an adequate motive can be shown." Id.

As a general rule, evidence of guilt of other crimes or misconduct is inadmissible to prove that a defendant is guilty of the crimes charged against him. *State* v. *O'Neill,* 200 Conn. 268, 273, 511 A.2d 321 (1986); C. McCormick, Evidence (3d Ed. 1984) § 190; 1 F. Wharton, Criminal Evidence (13th Ed. 1972) § 170. Because of its prejudicial impact, it is well settled that evidence of prior acts of misconduct is inadmissible merely to show a defendant's bad character or tendency to commit criminal acts. *State* v. *Johnson,* 190 Conn. 541, 548, 461 A.2d 981 (1983). "Evidence of other misconduct, however, 'may be allowed for the purpose of proving many different things, such as *intent,* identity, malice, *motive* or a system of criminal activity.' *State* v. *Ibraimov,* [187 Conn. 348, 352, 446 A.2d 382 (1982)]." (Emphasis added.) *State* v. *Braman,* 191 Conn. 670, 675–76, 469 A.2d 760 (1983).

Such evidence is admissible if the trial court, in the exercise of its sound discretion, determines that its probative value, for one or more of the purposes for which it is admissible, outweighs its prejudicial impact on the accused. *State* v. *O'Neill,* supra, 274; *State* v. *Johnson,* supra; *State* v. *Falby,* 187 Conn. 6, 23–24, 444 A.2d 213 (1982); *State* v. *Ryan,* 182 Conn. 335, 338, 438 A.2d 107 (1980). "Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done." *State* v. *Johnson,* supra, 548–49. On appellate review by this court we must give every reasonable presumption in favor of the trial court's ruling. *State* v. *Ryan,* supra; *State* v. *Barlow,* 177 Conn. 391, 394, 418 A.2d 46 (1979). The crime in this case was a seemingly inexplicable act of destruction. Evidence of the defendant's prior misconduct directed toward the owner of the house, which was the target of the arson, provided probative evidence of the defendant's intent and motive

in starting the fire. We cannot say that the trial court erred in admitting it.

The defendant also mentions in his statement of issues and in his brief a claim that the trial court erred when it allowed the state to produce evidence of his guilty plea to harassment and his subsequent arrest for and his admission to a violation of his probation. The defendant has, however, failed to brief either of these issues. His brief is limited to a discussion of the admissibility of testimony concerning the defendant's behavior, which the court allowed as evidence of prior misconduct. Issues not briefed are considered abandoned. " 'Assignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . .' " Hayes v. *Smith,* 194 Conn. 52, 66 n.12, 480 A.2d 425 (1984); *Cheney* v. *Strasburger,* 168 Conn. 135, 142, 357 A.2d 905 (1975).

Even if we were to consider these issues, it would not affect the result. Evidence of the defendant's guilty plea to a charge of harassment and his subsequent admission to violation of the conditions of his probation were, under the circumstances, admissions of prior misconduct which were properly admitted into evidence. See *Grasso* v. *Frattolillo,* 111 Conn. 209, 212, 149 A. 838 (1930).

### III

The defendant finally complains that the trial court erred in its charge to the jury by commenting on the evidence in a manifestly unjust, unfair and prejudicial manner.

The defendant took no relevant exceptions to the court's charge, nor as far as can be determined from the record, did he file any requests to charge. On this appeal, however, he has launched a wholesale attack

on the court's instructions to the jury. He claims that the trial court in its charge overemphasized the evidence elicited in support of the state's case, but failed to comment on evidence favorable to the defendant or detrimental to the state. He contends that, as a result, he was deprived of a fair trial and, consequently, his constitutional right to due process of law.

We need not reach the merits of the defendant's claim regarding the jury charge because he has failed to comply with the mandatory procedures of this court. *Weintraub* v. *Richard Dahn, Inc.*, 188 Conn. 570, 571, 452 A.2d 117 (1982). When claiming error in the charge to the jury, a party must include in its brief a *verbatim* statement of all relevant portions of the court's charge and the exceptions thereto. Practice Book § 4065 (d) (2) (formerly § 3060F [c] [2]). Also, evidence relevant to the error must be printed in *narrative form* with appropriate references to the transcript. Practice Book § 4065. Because the defendant's brief does not comply with these provisions of the Practice Book, and our perusal of the record discloses no reason to depart from them, we decline to review the defendant's claim further. *Weintraub* v. *Richard Dahn, Inc.*, supra, 572; *Cahill* v. *Board of Education*, 187 Conn. 94, 98, 444 A.2d 907 (1982); *Henderson* v. *Levy*, 183 Conn. 517, 518, 441 A.2d 10 (1981).

There is no error.

In this opinion the other justices concurred.