STATE OF CONNECTICUT *v.* BRUCE FELDER
(13501)
(13503)

Dupont, C. J., and Heiman and Hennessy, Js.

Argued September 12—decision released December 19, 1995

*Matthew J. Collins*, for the appellant (defendant).

*James A. Killen*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Kimberly A. Graham* and *Kathleen McNamara*, assistant state's attorneys, for the appellee (state).

HENNESSY, J. The defendant, Bruce Felder, appeals from a judgment of conviction, after a jury trial, of four counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4) and four counts of larceny in the second degree in violation of General Statutes § 53a-123 (a) (3).[1] The court sentenced the

---

[1] An additional charge of larceny in the second degree in violation of General Statutes § 53a-123 (a) (1) was eliminated after a motion to suppress

defendant to fourteen years of incarceration on each of the robbery counts and eight years on each of the larceny counts with all sentences to run concurrently.

The defendant claims that the trial court improperly (1) suppressed witnesses' prior statements during a suppression hearing and at trial, (2) interpreted Practice Book § 752 and (3) denied a motion to suppress evidence of identifications of the defendant made by two witnesses. All three claims relate primarily to the rulings of the trial court on the defendant's motion to suppress identification testimony. We affirm the judgment of the trial court.

The court found the following facts during the suppression hearing. Eraina Villani, Tamara Barriga, Kim Guerrette and Jessica Symonovich became lost while driving in Hartford and requested directions from a man standing near Pulaski Circle. The man drew a gun, entered the rear seat of the car and demanded that the women give him their money and jewelry. An interior light was lit, and the women had a clear view of the man's face during the five to twenty minutes that he was in the car. The man then ordered the women out of the car, demanded the key from the driver and drove away. The police arrived at the scene within minutes, and the victims described their assailant to the police as a black male, approximately five feet seven inches tall and one hundred fifty pounds, with thin facial hair, consisting of a mustache, beard or goatee, a medium to dark complexion, a crooked nose and high protruding facial bones.

Seven days later, the women met at the Hartford police station to give written statements and to look at

was denied by the court and a long form information was filed. Appeal No. 13501, ordered by this court to be consolidated with Appeal No. 13503, is an appeal from the judgment of the trial court that the defendant violated the terms of his probation. There are no issues briefed or arguments made in connection with that appeal.

photographs in an attempt to identify their assailant. The police gave Barriga, Guerrette and Symonovich books of photographs to look at while Villani was in a separate room. The police showed Villani eight photographs of black males, similar in age and general appearance. She positively identified a picture of the defendant as being of the person who had committed the robbery. After viewing several pages of photographs, Symonovich, who was seated at a conference table with Barriga and Guerrette, also saw a photograph of the defendant and identified it as being of the man who had robbed them. Barriga and Guerrette then viewed the photograph picked by Symonovich and identified it as being of the perpetrator.

I

We address the defendant's first two claims together. The defendant first claims that the trial court improperly denied his request at the suppression hearing for the production of prior statements of the four witnesses pursuant to Practice Book § 752.[2] During the cross-examination of Symonovich, the defendant requested production of any prior statements Symonovich had made. The state acknowledged possession of a statement, but argued that the statement was not discoverable prior to the witness' testimony on direct examination at trial. The court agreed and denied the defendant's request.[3]

Relying on Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the defendant argues

[2] Practice Book § 752 provides: "After a witness called by the state has testified on direct examination at trial, the judicial authority shall, on motion of the defendant, order the state to produce any statement of the witness in possession of the state or its agents, including state and local law enforcement officers, which statement relates to the subject matter about which the witness has testified."

[3] A review of the record does not show that the defendant made a request for prior statements of any other witness at the suppression hearing.

that his due process rights were violated because the prosecution suppressed evidence that was material and favorable to him. The defendant argues that the statements are material and favorable because each of the witnesses identified him because of his broken or disjointed nose, but three of the four witnesses testified that they did not include this facial trait in their prior statements to the police. The defendant claims that he was denied a fair suppression hearing and trial because the court did not order the prosecution to disclose these statements at the suppression hearing.

The state argues (1) that Practice Book § 752 does not require the state to produce statements of a witness in its possession that relate to the subject matter about which the witness has testified until the witness has been called by the state and testified on direct examination *at trial*, and (2) that because the evidence was disclosed during the trial, it could not be considered suppressed as that term is used in *Brady*. The defendant asserts that a literal interpretation of § 752, which does not require the state to produce prior statements of witnesses until trial, leads to unworkable and unfair results in that fairness requires that a defendant have access to statements at a potentially dispositive hearing.

At the suppression hearing, the defendant relied solely on the text of § 752 to support his request for Symonovich's prior statement to the police. "The rules of statutory construction apply with equal force to Practice Book rules. *State* v. *Cook*, 183 Conn. 520, 521, 441 A.2d 41 (1981). 'Where the meaning of a statute [or rule] is plain and unambiguous, the enactment speaks for itself and there is no occasion to construe it. Its unequivocal meaning is not subject to modification by way of construction.' . . ." (Citations omitted.) *Grievance Committee* v. *Trantolo*, 192 Conn. 15, 22, 470 A.2d 228 (1984). Section 752, however, clearly refers to a witness' testimony at trial, not to pretrial motion hearings. Fur-

thermore, this issue was addressed and settled in *State* v. *Davis*, 175 Conn. 250, 397 A.2d 1347 (1978). In *Davis*, our Supreme Court stated that "[s]ection 533N [now § 752] specifically limits the availability of such a statement 'until the witness has testified upon direct examination on the *trial* of the case.' " (Emphasis in original.) Id., 252; see also *State* v. *Anonymous (83-FG)*, 190 Conn. 715, 733 n.13, 463 A.2d 533 (1983) ("§ 752 applies only after a witness has testified at a trial and is inapplicable to a pretrial hearing on a motion to suppress"). In addition, this court has held that a defendant has no right to statements under § 752 if the witness has *not* testified at trial. *State* v. *Cardona*, 6 Conn. App. 124, 128, 504 A.2d 1061 (1986).

A hearing on a motion to suppress identification is not potentially dispositive because such a motion, even if granted, would not terminate the prosecution. Unlike a finding of no probable cause, which deprives the trial court of jurisdiction over the defendant's person; *State* v. *Greenfield*, 228 Conn. 62, 73, 634 A.2d 879 (1993); the granting of a motion to suppress identification has no such effect. Here, the state produced the statements at trial in accordance with the requirements of § 752, and the defendant used the statements in his cross-examination of the state's witnesses at trial. The record, therefore, does not support the defendant's claim that he was harmed or denied a fair trial by reason of the court's refusal to deviate from the rules of practice.

Finally, the defendant contends, relying on *Brady*, that his due process rights were violated because the prosecution, irrespective of its good or bad faith, did not produce evidence favorable to him that was material to guilt after a request for such evidence. The principles set forth in *Brady* do not apply in this case. "Evidence . . . that is disclosed, even if during trial, is not considered suppressed as that term is used in *Brady*." *State* v. *Dolphin*, 195 Conn. 444, 455–56, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84

(1985). Because the statements were disclosed at trial, the defendant can complain only of the timing of the disclosure. Under these circumstances, the defendant bears the burden of proving that the disclosure came so late as to prevent him from receiving a fair trial. *State* v. *Walker*, 214 Conn. 122, 127, 571 A.2d 686 (1990). As noted previously, the record does not support the defendant's claim that the timing of the disclosure denied him a fair trial or prejudiced him in any way.

The trial court acted correctly in denying the defendant's request at the suppression hearing for witness statements.

## II

The defendant's final claim is that the court improperly denied his motion to suppress identifications made by Barriga and Guerrette. The court found that the procedure used with respect to the photographic identifications made by Barriga and Guerrette was unnecessarily suggestive. The court then stated: "Applying the *Manson* v. *Brathwaite* [432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977)] factors, and upon a consideration of the totality of the circumstances, I feel all of the identifications are reliable, that they meet the reliability test . . . ." The defendant contends that the court abused its discretion in finding that the state had shown by clear and convincing evidence that, although the identification procedures employed involving Barriga and Guerrette were unnecessarily suggestive, the identifications made by these two witnesses were nevertheless reliable because each witness had an independent recollection of the defendant from her observations made during the commission of the offense.

If a court determines that an identification procedure was unnecessarily suggestive, the court may determine that the identifications are nevertheless reliable and thus admissible. *State* v. *Ramsundar*, 204 Conn. 4, 10,

526 A.2d 1311, cert. denied, 484 U.S. 955, 108 S. Ct. 348, 98 L. Ed. 2d 374 (1987). In *Manson* v. *Brathwaite*, supra, 432 U.S. 114–15, the United States Supreme Court set forth the following factors for determining whether an identification is reliable although the identification procedure was unnecessarily suggestive: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty the witness demonstrated at the confrontation; and (5) the time between the crime and the confrontation. We weigh the corrupting effect of the suggestive identification against these factors. Our Supreme Court has adopted the factors set forth in *Manson* as those to be considered in determining the reliability of an identification subsequent to a suggestive identification procedure. *State* v. *Ramsundar*, supra, 10–11. Where the factual basis of the court's decision is challenged, we must determine whether the facts that have been found are supported by the evidence or whether, in light of the evidence and the pleading in the whole record, those facts are clearly erroneous. *State* v. *Zindros*, 189 Conn. 228, 238, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984).

The court found that the victims had ample opportunity to view the perpetrator's face. Both Barriga and Guerrette testified that they saw the defendant when he was outside of the car, where there was some light, and almost all of the time when he was in the car because he ordered that the dome light in the car be kept on. Barriga testified that the defendant was in the car between five and ten minutes. Additionally, Barriga and Guerrette were within two feet of their assailant and had a full view of his face. The court further found that the attention of the victims was focused on the defendant's face and gun. The witnesses also testified

that the defendant, who was not more than a few feet from them, spoke to and pointed a gun at them. The court found that the victims provided an accurate description of their assailant to the police. Both Barriga and Guerrette testified that they told the police that the assailant was a black male with prominent cheekbones, wearing a black jacket and a hat. Barriga added that he was five feet eight or nine inches tall and had a light moustache, goatee and braids. Guerrette added that he was in his late twenties, had white lettering on his jacket and wore a baseball cap. The court found that all of the victims displayed a very high level of certainty that it was the defendant who had committed the crime. The record reflects that both Barriga and Guerrette had identified the defendant with some degree of certainty. Barriga testified that she was almost positive that the photograph she picked out was of the person who had committed the offense. Guerrette testified that she was certain that the photograph she selected was that of the assailant.

The court found that the ten day period between the commission of the crime and the identification of the photograph of the perpetrator was not sufficiently lengthy to render the identifications unreliable. The trial court was guided by *State* v. *Howard*, 221 Conn. 447, 455, 604 A.2d 1294 (1992), wherein the Supreme Court held that a two and one-half month hiatus between the commission of the crime and the identification was not so lengthy that it rendered the identification unreliable. See also *State* v. *Parker*, 197 Conn. 595, 600, 500 A.2d 551 (1985). The facts found by the trial court are supported by the record. Under the circumstances as presented, we conclude that the trial court did not improperly admit Barriga's and Guerrette's identification testimony.

The judgments are affirmed.

In this opinion the other judges concurred.