STATE OF CONNECTICUT *v.* EDWARD T. CAPRILOZZI
(AC 15211)

O'Connell, Landau and Mulcahy, Js.

Argued March 20—officially released June 17, 1997

*Robert P. Pickering*, with whom, on the brief, was *F. Mac Buckley*, for the appellant (defendant).

*Peter A. McShane*, assistant state's attorney, with whom, on the brief, was *Kevin T. Kane*, state's attorney, for the appellee (state).

*Opinion*

O'CONNELL, J. The defendant appeals from the judgment of conviction, following a jury trial, of larceny in the first degree in violation of General Statutes § 53a-122 and conspiracy to commit larceny in the first degree in violation of General Statutes §§ 53a-48 and 53a-122. The defendant claims that the trial court improperly (1) admitted a state's exhibit into evidence, (2) admitted evidence of a coconspirator's guilty plea and (3) admitted a conclusory hearsay opinion of a nonexpert witness into evidence. In addition, the defendant claims (4) that there was insufficient evidence to support his conviction on either count. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In June, 1994, Humprey Amedeo, the owner of Connecticut Beverage Company (company) located in Norwich, was informed that approximately 773 cases

of beer were unaccounted for during the June, 1994 inventory. The defendant was employed at the company as the day shift warehouse manager from June, 1992, to October, 1994. His duties and responsibilities included the day-to-day operation of the warehouse and the loading of delivery trucks. The defendant also participated in the inventory of stock. Inventory was required twice a year by the liquor control commission and was conducted as follows: Two teams began at opposite ends of the warehouse, and each team conducted an independent inventory of the entire warehouse. When the two teams completed their counts, they met to determine if the numbers reconciled. If the two teams agreed, the numbers were recorded. If they did not agree, the teams recounted until the numbers reflected an accurate amount.

The following precautions were also used by the company to prevent loss of stock. The night manager loaded the trucks and counted each load to ascertain that each truck contained the correct number of cases. The night manager signed a load sheet indicating the contents of each truck. The next morning, the day manager and the driver would verify the count and the day manager would sign off on the load sheet. A final count was conducted after any add-ons were placed on the trucks. Once the add-ons and final count were completed, the truck doors were closed and the truck left the warehouse to begin its delivery route.

As a result of the shortage disclosed by the June inventory, Amedeo ordered another inventory in September, 1994. That inventory, conducted in the same manner as the semiannual inventories, revealed an additional shortage of 408 cases of beer. When Amedeo apprised the defendant of the June inventory shortage, the defendant responded that there must be a bookkeeping error.

Following discovery of the inventory shortage, Amedeo hired a private investigator, Arthur Heely, to help determine the cause of the inventory loss. Heely eventually focused on Eric Finley, one of the drivers, and followed him on his delivery route. On September 26, 1995, Heely observed Finley taking a case of beer from his truck and placing it in the trunk of a car belonging to Beansy Carrigan.

When Heely confronted Finley, Finley admitted that he and the defendant were involved in a scheme to steal beer for their personal use as well as to sell to package store owners. Finley testified that he and the defendant had loaded extra cases onto Finley's truck without accounting for them. The defendant would sign off on the load sheet despite the additional cases on the truck. Finley would then sell them to people along his route for cash, and he and the defendant would divide the money. This scheme continued for ten to eleven months, during which Finley and the defendant earned approximately $700 each per month. The defendant warned Finley that they should stop stealing the beer because the "inventory was really messed up."

I

The defendant first claims that the trial court improperly admitted into evidence a state's exhibit that consisted of a computer generated inventory control sheet bearing handwritten calculations. The state argued that the exhibit was admissible under the business exception to the hearsay evidence rule contained in General Statutes § 52-180. A hearsay document may be admitted into evidence if (1) it was made in the regular course of business, (2) it was the regular course of business to make such a writing, and (3) the writing was made at the time of the transaction or occurrence or within a reasonable time thereafter. Id.

The defendant contends that the business entry exception does not apply in the present case because the exhibit was prepared in anticipation of litigation. For purposes of this decision, we assume, without deciding, that a statement prepared to support an insurance claim is the equivalent of a document prepared in anticipation of litigation. The defendant relies on Amedeo's testimony that the exhibit was prepared in order to submit a claim to his insurance company. Accordingly, the defendant argues that the exhibit does not meet the requirements (1) that it be prepared in the regular course of business and (2) that it was the regular course of business to make the exhibit. We are not persuaded.

Appellate review of business entry claims is limited to determining whether the trial court abused its discretion in ruling that a document qualified under § 52-180. *River Dock & Pile, Inc.* v. *O & G Industries, Inc.*, 219 Conn. 787, 795, 595 A.2d 839 (1991). That statute is to be liberally construed and records will not be excluded where the statutory requirements can reasonably be assumed to have been met. *Jefferson Garden Associates* v. *Greene*, 202 Conn. 128, 141, 520 A.2d 173 (1987); C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.14.3, p. 386.

Even if the challenged exhibit was prepared solely for litigation, its exclusion would not be automatic. "The generally accepted view . . . is that documents prepared for litigation are excluded, not on a per se basis, but rather upon an inquiry into whether such documents bear circumstantial indicia of lack of trustworthiness. In the exercise of appropriate discretion, courts may exclude such records where they are self-serving and a motive for falsification can be demonstrated. . . . Although this court has recognized that the trustworthiness of business records, under § 52-180, comes from their being used for business and not for

litigation . . . we have not thereby mandated the exclusion of multipurpose documents that have ancillary utility in subsequent litigation. We have emphasized, instead: that § 52-180 should be liberally construed . . . that the essential hallmark of admissibility under § 52-180 is the trustworthiness of the document . . . and that appellate review in these cases is limited to ascertaining whether the trial court abused its discretion." (Citations omitted; internal quotation marks omitted.) *Jefferson Garden Associates* v. *Greene*, supra, 202 Conn. 140–41.

Despite Amedeo's testimony that he was planning to submit an insurance claim, it was within the trial court's discretion to determine whether the statute was satisfied. We attach no significance to the facts that the purpose of the January and June inventories, also admitted as exhibits, was to satisfy state liquor control commission requirements and that the impetus of the September inventory, the challenged exhibit, was to identify the reason for the shortage that came to light in the June inventory. It is reasonable that a warehouse business would inventory the content of its warehouse and that records of the inventory would be made. The September, 1994 inventory was conducted in the same manner as the semiannual inventories. We conclude, therefore, that the challenged inventory record contained sufficient indicia of reliability and trustworthiness for the trial court to allow its admission under the business record exception to the hearsay rule.

The defendant also argues that the exhibit was inadmissible for the reason that Amedeo's notes and calculations were written at the bottom of the page. Amedeo explained that the calculations were of the amount of his loss, the multiplication of the wholesale price by the number of cases missing. It was necessary that the state prove the value of the property alleged to have been stolen, and these calculations could have been

performed in the presence of the jury. Accordingly, it is irrelevant that the calculations had been performed in advance and appeared as notations on the computer sheets.

The trial court did not abuse its discretion in admitting into evidence the computer printout of the inventory.

## II

The defendant next complains that the trial court improperly allowed the state to question Finley, the defendant's coconspirator, concerning his guilty plea to a similar charge. The defendant concedes that he did not object to this line of questioning, nor did he request a curative instruction. During his cross-examination, the defendant asked Finley six questions concerning his conviction.

Notwithstanding his failure to preserve the claim, the defendant seeks appellate review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[1] or under the plain error doctrine. Practice Book § 4061 (formerly § 4185).[2]

To qualify for *Golding* review, the defendant's claim must meet all four *Golding* conditions and the appellate tribunal is free to respond to the claim by focusing on whichever condition is most relevant in the particular

---

[1] *State* v. *Golding*, supra, 213 Conn. 239–40, held that a party can prevail on a claim not adequately presented at trial only if all of the following conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt."

[2] Practice Book § 4061 (formerly § 4185) provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

case. *State* v. *Golding*, supra, 213 Conn. 239–40. In the present case, we focus on the second prong, i.e., that the claim is of constitutional magnitude alleging the violation of a fundamental right. See *State* v. *Gooch*, 186 Conn. 17, 18, 438 A.2d 867 (1982). "Generally, the admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right, no constitutional issue is involved." (Internal quotation marks omitted.) *State* v. *Vilalastra*, 207 Conn. 35, 46, 540 A.2d 42 (1988). Because the defendant's claim in the present case involves an evidentiary ruling, he is not entitled to appellate review under the *Golding* doctrine.

We next consider whether this issue is entitled to plain error review. Generally, where a claimed error of a nonconstitutional nature is not brought to the attention of the trial court, appellate review of that claim is available only if it constitutes plain error. *Kolich* v. *Shugrue*, 198 Conn. 322, 326, 502 A.2d 918 (1986). To prevail under the plain error doctrine, the defendant must demonstrate that the "claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." *State* v. *Day*, 233 Conn. 813, 849, 661 A.2d 539 (1995). This doctrine is not implicated and review of the claimed error is not undertaken "unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) Id., quoting *State* v. *Boles*, 223 Conn. 535, 551, 613 A.2d 770 (1992). Furthermore, even if the error is so apparent and review is afforded, the defendant cannot prevail on the basis of an error that lacks constitutional dimension unless he demonstrates that it "likely affected the result of the trial." *State* v. *Day*, supra, 850.

The defendant did not object to the testimony about the guilty plea on direct examination. The defendant himself elicited information about Finley's guilty plea.

What is most significant, however, is that Finley's guilt was otherwise established by his own testimony, which also implicated the defendant. We conclude that the admission of Finley's guilty plea did not cause manifest injustice and did not erode the integrity of the judicial proceeding, nor did it affect the outcome of the trial. Accordingly, because the defendant's arguments under both *Golding* and plain error review are unavailing, we decline to review the claim.

## III

The defendant next complains that the trial court improperly allowed private investigator Heely to testify as to his conclusions resulting from his investigation. The defendant did not object to the evidence, nor did he move that it be stricken.[3] The defendant seeks plain error review. See our discussion of plain error in part II of this opinion. This claim does not meet the requirements for plain error review.

## IV

The defendant's final claim is that the evidence was insufficient to prove beyond a reasonable doubt that (1) he had the requisite intent to commit larceny in the first degree and conspiracy to commit larceny in the first degree and (2) he wrongfully took, obtained or withheld any property from the company.

"[W]e have consistently employed a two-part analysis in appellate review of the sufficiency of the evidence to sustain a criminal conviction. *State* v. *Salz*, 226 Conn. 20, 31, 627 A.2d 862 (1993). First, we construe the evi-

---

[3] Despite not specifically objecting to this question, the defendant claims the benefit of an earlier objection to a line of questions. Even if this earlier objection could be considered to have preserved the issue, it would not benefit the defendant because his prior objection was on the ground of hearsay, not on the ground of a nonexpert's being allowed to give opinion evidence. Appellate review is available only on the grounds upon which an objection is made. *State* v. *Newsome*, 238 Conn. 588, 596, 682 A.2d 972 (1996).

dence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. Id. That the evidence is circumstantial rather than direct does not diminish the probative force of that evidence. *State* v. *Carpenter*, 214 Conn. 77, 79, 570 A.2d 203 (1990), on appeal after remand, 220 Conn. 169, 595 A.2d 881 (1991), cert. denied, 502 U.S. 1034, 112 S. Ct. 877, 116 L. Ed. 2d 781 (1992)." (Internal quotation marks omitted.) *State* v. *DePastino*, 228 Conn. 552, 570, 638 A.2d 578 (1994). We must be mindful, however, that "[a]lthough the jury may draw reasonable, logical inferences from the facts proven, [it] may not resort to speculation and conjecture. *State* v. *Saracino*, 178 Conn. 416, 419, 423 A.2d 102 (1979). Each essential element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)." (Internal quotation marks omitted.) *State* v. *King*, 216 Conn. 585, 601, 583 A.2d 896 (1990), on appeal after remand, 218 Conn. 747, 591 A.2d 813 (1991).

A person commits larceny in the first degree "when, with intent to deprive another of property or to appropriate the same to himself . . . he wrongfully takes, obtains or withholds such property from an owner"; General Statutes § 53a-119; and "the value of the property or service exceeds ten thousand dollars . . . ." General Statutes § 53a-122 (a) (2). "Intent usually is proved only by circumstantial evidence . . . ." *State* v. *Washington*, 15 Conn. App. 704, 716, 546 A.2d 911 (1988); *State* v. *Morrill*, 193 Conn. 602, 609, 478 A.2d 994 (1984). "Intent may be, and usually is, inferred from conduct. . . . Intention is a mental process, and of necessity it must be proved by the statements or actions of the person whose act is being scrutinized. . . . A

person's intention is to be inferred from his conduct. . . . Where there is sufficient evidence to support a reasonable inference that the defendant intended to commit the crime charged, whether such an inference should be drawn is properly a question for the jury to decide." (Citations omitted; internal quotation marks omitted.) *State* v. *Morrill*, supra, 609.

"To establish the crime of conspiracy under § 53a-48 of the General Statutes, the state must show that there was an agreement between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. . . . The existence of a formal agreement between the parties need not be proved; it is sufficient to show that they are knowingly engaged in a mutual plan to do a forbidden act." (Citations omitted; internal quotation marks omitted.) *State* v. *Lynch*, 21 Conn. App. 386, 392, 574 A.2d 230, cert. denied, 216 Conn. 806, 580 A.2d 63 (1990). Because of the secret nature of conspiracies, a conviction is usually based on circumstantial evidence. *State* v. *Vessichio*, 197 Conn. 644, 656, 500 A.2d 1311 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986). Mere presence at the scene of the crime, even when coupled with knowledge of the crime, is insufficient to establish guilt of a conspiracy. *State* v. *Stellato*, 10 Conn. App. 447, 454, 523 A.2d 1345 (1987).

We must resolve whether there was sufficient evidence for the jury reasonably to conclude that the defendant intended wrongfully to deprive the company of its property and that the defendant took part in a mutual plan with Finley to do so.

During the state's direct examination of Finley, he described the scheme and the equal division of the money. Finley testified that he and the defendant planned to take the beer, unaccounted for from the warehouse, and sell it. Moreover, the jury may have

reasonably inferred from the evidence of the procedural safeguards that the driver could not steal inventory undetected without the day manager's assistance. After reviewing the cumulative evidence, we conclude that there was sufficient evidence for the jury reasonably to conclude that the defendant and Finley intended and conspired to steal beer from the company and carried out this plan for several months, depriving the company of substantial inventory. Accordingly, the jury may have reasonably concluded that the defendant committed larceny in the first degree in violation of § 53a-122 and committed conspiracy in violation of §§ 53a-48 and 53a-122.

The judgment is affirmed.

In this opinion the other judges concurred.