STATE OF CONNECTICUT *v.* JOHN O. LINDSTROM
(AC 16023)

O'Connell, C. J., and Spear and Hennessy, Js.

Argued January 16—officially released September 23, 1997

*Lauren Weisfeld,* assistant public defender, for the appellant (defendant).

*Ronald G. Weller,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Herbert E. Carlson, Jr.,* supervisory assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, John O. Lindstrom, appeals[1] from a judgment of conviction, after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) and kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B).

The defendant claims that the trial court improperly (1) deprived the defendant of due process by denying his motion to suppress the victim's pretrial identification of him, and subsequently allowing her to identify him in court, (2) admitted constancy of accusation evidence, (3) denied him access to drug and psychiatric records of the victim and (4) instructed the jury on reasonable doubt.

The jury reasonably could have found the following facts. On the evening of August 11, 1993, the victim[2] drove to Hartford from her home in Wethersfield to

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023 and General Statutes § 51-199 (c), the Supreme Court transferred the appeal to this court.

[2] Acting in compliance with General Statutes § 54-86e, we treat the name of the victim as confidential. In accordance with that statute, it has been made known to the defendant.

purchase heroin. After purchasing and consuming heroin, she intended to drive home but found that she could not start her car. She began hitchhiking and a man later identified as the defendant offered her a ride, which she accepted. Instead of driving to Wethersfield the defendant drove through Hartford while holding a knife to the victim's throat. The defendant eventually stopped at a vacant lot and threatened to kill the victim if she did not do as she was told. After he unsuccessfully attempted vaginal intercourse with the victim, the defendant compelled her to perform oral sex. Two hours later, the victim pretended that she wanted to be with the defendant and asked if he could take her to his home so she could shower. The defendant agreed. The victim jumped out of the defendant's car at a stop light, ran into a convenience store, asked for a pen and, as the defendant drove away, wrote down the license plate number of the car he was driving. She then called the police.

I

The defendant first claims that the trial court improperly denied his motion to suppress the out-of-court identification of him by the victim because the procedure used to obtain that identification was unnecessarily suggestive and unreliable. He further claimed that any in-court identification based on it would lack an independent basis.

The following additional facts are relevant to this claim. Approximately two months after the assault, the victim was shown a photographic array in an attempt by the police to identify her assailant. Of the eight people depicted, the victim knew seven, one of whom was her husband. The defendant's photograph was in the middle of the array and, upon seeing it and before looking at the remaining photographs, the victim immediately identified him as her attacker. The trial court found the

identification procedure to be unnecessarily suggestive but reliable under the totality of circumstances. The trial court denied the motion to suppress and allowed the in-court identification.[3]

The defendant claims that the denial of the motion to suppress violated his right to due process and a fair trial. "A defendant who moves to suppress identification evidence bears the initial burden of proving that the identification resulted from an unconstitutional procedure. . . . To succeed on the motion to suppress, the defendant must prove (1) that the identification procedures were unnecessarily suggestive, *and* (2) that the resulting identification was not reliable in the totality of the circumstances." (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Askew*, 44 Conn. App. 280, 283–84, 688 A.2d 1346 (1997). A reviewing court need reach only the second prong of this test if the trial court has made a finding that the original identification procedure was unnecessarily suggestive. See *State* v. *Payne*, 219 Conn. 93, 107, 591 A.2d 1246 (1991). In analyzing the totality of the circumstances, the reviewing court, after determining that the original identification procedure was unnecessarily suggestive, must determine if it was so much so as to render it conducive to irreparable misidentification. If and only if the original identification procedure was so suggestive as to be conducive to irreparable misidentification should the subsequent in-court identification be excluded. See *State* v. *Smith*, 200 Conn. 465, 470, 512 A.2d 189 (1986); *State* v. *Askew*, supra, 283–84.

The factors used to determine whether an unnecessarily suggestive photographic array is nevertheless reliable are set forth in *State* v. *Felder*, 39 Conn. App. 840, 668 A.2d 382, cert. denied, 236 Conn. 906, 670 A.2d

---

[3] We note that the defendant was allowed to introduce the eight photographs used in the array as a full exhibit in his case-in-chief.

1306 (1996). "If a court determines that an identification procedure was unnecessarily suggestive, the court may determine that the identifications are nevertheless reliable and thus admissible. *State* v. *Ramsundar*, 204 Conn. 4, 10, 526 A.2d 1311, cert. denied, 484 U.S. 955, 108 S. Ct. 348, 98 L. Ed. 2d 374 (1987). In *Manson* v. *Brathwaite*, [432 U.S. 98, 114–15, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977)], the United States Supreme Court set forth the following factors for determining whether an identification is reliable although the identification procedure was unnecessarily suggestive: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty the witness demonstrated at the confrontation; and (5) the time between the crime and the confrontation. We weigh the corrupting effect of the suggestive identification against these factors. Our Supreme Court has adopted the factors set forth in *Manson* as those to be considered in determining the reliability of an identification subsequent to a suggestive identification procedure. *State* v. *Ramsundar*, supra, 10–11. Where the factual basis of the court's decision is challenged, we must determine whether the facts that have been found are supported by the evidence or whether, in light of the evidence and the pleading in the whole record, those facts are clearly erroneous. *State* v. *Zindros*, 189 Conn. 228, 238, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984)." *State* v. *Felder*, supra, 846–47.

On the basis of the evidence, the trial court found that the victim had ample opportunity to view her assailant in that he did not cover his face or disguise it in any way, the car light went on when she entered the car, there were streetlights on as they drove throughout the city, her vision was not impaired and she was close to her assailant's face and observed him over a period

of hours. The trial court further found that the degree of the victim's attentiveness was evident from the circumstances of her entering a strange car and therefore focusing on the driver's face and appearance, and her being a victim whose sensory perceptions would be acute because of her situation. Additionally, the court found that the victim's description of her attacker was detailed and consistent throughout the investigation, that the victim demonstrated a high level of certainty at the confrontation and that the time between the crime and the confrontation was not so inordinately long as to make the identification unreliable.

After reviewing the facts of this case, we conclude that the trial court was correct in denying the motion to suppress. Despite the fact that the trial court found the photographic array to be unnecessarily suggestive, the trial court was correct in not excluding the in-court identification because, under the totality of the circumstances, there was not a risk of irreparable misidentification.

## II

The defendant's second claim is that the trial court's admission of constancy of accusation evidence by three police officers violated his right to due process. We decline to review this claim because the defendant failed to preserve it.

The following additional facts are relevant to our resolution of this claim. Three police officers testified for the state at trial. Detective Luisa St. Pierre testified about the details of the sexual assault provided to her by the victim on October 13, 1993, the day the victim was shown the photographic array. Officer Rocco Fierranti and Officer Kelly Gerent testified about their conversations with the victim, which occurred immediately after the sexual assault. The defendant cross-examined the officers. The defendant did not object to the three

officers' testimony at trial. The defendant does not directly concede that he failed to preserve his claim, and requests this court on appeal to review his claim according to *State* v. *Troupe*, 237 Conn. 284, 293–306, 677 A.2d 917 (1996). In doing so, he urges this court to abandon the constancy of accusation doctrine.[4] In the alternative, he requests us to review his claim pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), and the plain error doctrine.

The defendant argues that his claim is entitled to *Golding* review[5] because the testimony of the three constancy of accusation witnesses violated his constitutional rights to confrontation and equal protection. The defendant's claim, however, fails the second prong of *Golding* because it is not of constitutional magnitude. Our Supreme Court has held that the constancy of accusation doctrine does not violate the right to confrontation. "Because constancy of accusation evidence is not admissible unless the victim has testified, and is subject to cross-examination, concerning the crime and the identity of the person or persons to whom the victim has reported the crime . . . we reject the defendant's contention that the constancy of accusation doctrine violates the sixth amendment." (Citations omitted.) *State* v. *Troupe*, supra, 237 Conn. 293. The constancy of accusation doctrine also does not implicate the right

[4] We note that our Supreme Court has modified the constancy of accusation doctrine. See *State* v. *Troupe*, supra, 237 Conn. 304. Even if we were to review the defendant's claim substantively, we would not have the authority to deviate from this recent modification.

[5] " '[A] defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt.' *State* v. *Golding*, supra, 213 Conn. 239–40." *State* v. *McDougal*, 241 Conn. 502, 523 n.15, 699 A.2d 872 (1997).

to equal protection because it applies equally to male and female victims. See *State* v. *Kelley*, 229 Conn. 557, 565, 643 A.2d 854 (1994).

Alternatively, the defendant urges us to review his claim under the plain error doctrine. "Generally, where a claimed error of a nonconstitutional nature is not brought to the attention of the trial court, appellate review of that claim is available only if it constitutes plain error. . . . To prevail under the plain error doctrine, the defendant must demonstrate that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . This doctrine is not implicated and review of the claimed error is not undertaken unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Furthermore, even if the error is so apparent and review is afforded, the defendant cannot prevail on the basis of an error that lacks constitutional dimension unless he demonstrates that it likely affected the result of the trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Caprilozzi*, 45 Conn. App. 455, 462, 696 A.2d 380 (1997).

The testimony of the three police officers corroborated the victim's testimony. The defendant cross-examined the witnesses. We can find nothing that occurred at trial that affected the integrity of and confidence in the judicial proceedings.

### III

The defendant's third claim is that the trial court improperly denied him access to some of the victim's medical and psychological records. The following facts are relevant to our resolution of this claim. The defendant subpoenaed the victim's medical records concerning her drug use and a suicide attempt. After the defendant's direct examination of the victim, the court

permitted the defendant to voir dire the victim outside the presence of the jury on the issues of her drug use and a suicide attempt in order to prove that the medical records were relevant for impeachment purposes. The victim testified during voir dire that she is a heroin addict and ingested heroin on the night of the assault. She also testified that she had sought treatment for her drug use as well as for a suicide attempt that occurred in 1994.

On the basis of that testimony, the trial court found that a failure to produce the records could impair the defendant's ability to impeach the victim. After obtaining the witness' waiver of confidentiality, the trial court inspected the records in camera, and thereafter released certain documents that would relate to the victim's ability to perceive and relate the truth. These included records from Hartford Hospital relating to the suicide attempt, records from both the Hartford Dispensary and the Reid Treatment Center pertaining to her heroin addiction, and records from UConn Medical Center pertaining to both heroin and cocaine addiction. The court admitted these records as exhibits at trial and the defendant cross-examined the victim on them. He also called an expert witness who testified as to the effect of heroin, cocaine and Xanax on a person's ability to perceive the truth. The remaining medical records were sealed by the court.

The standard to be used to review a trial court's decision on the relevance and admissibility of evidence is abuse of discretion. " 'The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion.' " *State* v. *Bova,* 240 Conn. 210, 219, 690 A.2d 1370 (1997).

The defendant claims that the trial court abused its discretion when it denied him access to all of the victim's medical records and that, therefore, his constitutional right to confrontation was violated. The trial court in this case followed the well established procedure for determining whether medical records should be used for purposes of impeachment.[6] "Th[at] procedure reflects a deliberate and careful balancing of the defendant's right to confrontation and cross-examination against the public policy in preserving confidentiality in such records." *State* v. *Pratt*, 235 Conn. 595, 607–608, 669 A.2d 562 (1995).

In this case the defendant sought to impeach the victim on the basis of a decreased perception attributable to the use of drugs. The trial court allowed the defendant access to the victim's medical records regarding her drug use, and he was able to cross-examine her on them. In addition, he presented an expert who testified on the effects of drugs on perception. "In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial." (Internal quotation marks omitted.) *State* v. *Barrett*, 43 Conn. App. 667, 675, 685 A.2d 677, cert.

---

[6] The procedure to be followed by trial courts in determining whether a defendant should have access to a victim's confidential medical records is delineated in *State* v. *D'Ambrosio*, 212 Conn. 50, 561 A.2d 422, cert. denied, 493 U.S. 1063, 110 S. Ct. 880, 107 L. Ed. 2d 963 (1989). The trial court, after finding that the defendant has made a showing that withholding the records would impair his right to impeach the victim, and after obtaining the victim's permission, must analyze the records in camera for relevancy. If the trial court determines that any portion of the records is probative of the victim's ability to relate the truth or to observe, recollect and narrate relevant occurrences, then the court must obtain the further waiver of the victim to release those records to the defendant. See id., 58. The trial court in this case complied with this procedure.

denied, 240 Conn. 923, 692 A.2d 817 (1997). We can see no violation of the defendant's right to confrontation when he was able to question the victim on all of the subjects that he proposed to the court as necessary fields of inquiry for impeachment purposes.

It is axiomatic that the right to confrontation is not absolute. *State* v. *Wilkes*, 236 Conn. 176, 183, 671 A.2d 1296 (1996). "The confrontation clause does not . . . suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . The constitution does not require that a defendant be permitted to present every piece of evidence he wants." (Citation omitted; internal quotation marks omitted.) *State* v. *Barrett*, supra, 43 Conn. App. 676.[7] We conclude, in light of the procedure used by the court and our review of the records, that the court did not abuse its discretion in denying access to the portion of the records not made available to the defendant. Under the circumstances of this case, we find that the defendant's right to confrontation was not violated.

## IV

The defendant's fourth and final claim is that the trial court's instruction to the jury on reasonable doubt was improper. The defendant takes issue with the following portion of the trial court's instruction: "[I]t is a doubt for which a reasonable person after all of the evidence in the case has been analyzed and presented can give a valid reason. . . . Reasonable doubt is the kind of doubt upon which reasonable persons such as yourselves in the more serious affairs of your own lives

---

[7] We note that the defendant is not aware of the contents of the sealed portion of the victim's medical records and, therefore, does not know if the remainder of the records would even be relevant. "A criminal defendant does not have a right to conduct a general fishing expedition into a witness' privileged records. *State* v. *Januszewski*, 182 Conn. 142, 172, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981)." (Internal quotation marks omitted.) *State* v. *Pratt*, supra, 235 Conn. 595.

would hesitate to act." The defendant filed a request to charge with the court, but did not make any objection when the court used its own instruction. Although the defendant's claim is unpreserved, we review it pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40, because it implicates the defendant's constitutional rights.[8]

In *State* v. *Ellis*, 232 Conn. 691, 657 A.2d 1099 (1995), our Supreme Court upheld a nearly identical instruction.[9] The *Ellis* court wrote of this type of instruction, "[w]e have repeatedly and consistently upheld identical or substantially similar instructions on reasonable doubt. . . . In our previous cases, we concluded that this instruction did not decrease the state's burden of proof when viewed in the context of the charge as a whole. . . . In this case, the jury charge, taken as a whole, presents an accurate definition of proof beyond a reasonable doubt. . . . [There is] no compelling reason to depart from this long line of precedent and we therefore decline to do so." (Citations omitted; internal quotation marks omitted.) Id., 705.

The defendant's claim is no different from that presented in *Ellis*. We, therefore, conclude that the instruction was proper.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] In *State* v. *Schiappa*, 44 Conn. App. 731, 739, 692 A.2d 820 (1997), we found that a defendant's unpreserved claim of an improper jury instruction implicated due process rights to an adequately instructed jury and therefore merited *Golding* review.

[9] The instruction in *Ellis* was as follows: " 'A reasonable doubt is a doubt for which a valid reason can be assigned. . . . It is . . . such a doubt as in the serious affairs which concern you in your everyday life you would pay some strict attention to.' " *State* v. *Ellis*, supra, 232 Conn. 705.