STATE OF CONNECTICUT *v.* GREGORY SMITH
(AC 24384)
(AC 24418)

Dranginis, Flynn and McLachlan, Js.

---

Argued January 20—officially released March 29, 2005

*William B. Westcott*, special public defender, for the appellant (defendant).

*Susann E. Gill*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Margaret E. Kelley*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Gregory Smith, appeals from the judgment of his convictions by the jury for the crimes of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 and 53a-134 (a) (4), and from the judgment of his conviction by the court of being a persistent dangerous felony offender in violation of General Statutes § 53a-40 (a) (1). The defendant was sentenced to a term of twenty years on the count of robbery in the first degree, which reflected a sentence enhancement

because the court found the defendant to be a persistent dangerous felony offender, and a second sentence of ten years on the count of attempt to commit robbery in the first degree, to run consecutively to the first sentence, for a total effective sentence of thirty years. We affirm the judgments of the trial court.

On appeal, the defendant challenges (1) the consolidation of three charges, (2) the admission of facts from each of the robberies at issue as prior bad acts to establish intent and an element of the crimes, and (3) the fairness of the notice he received of the contents of the amended part B informations filed by the state. We address each in turn and begin with the joinder issue.

I

Practice Book § 41-19 provides: "The judicial authority may, upon its own motion or the motion of any party, order that two or more informations, whether against the same defendant or different defendants, be tried together." General Statutes § 54-57 provides: "Whenever two or more cases are pending at the same time against the same party in the same court for offenses of the same character, counts for such offenses may be joined in one information unless the court orders otherwise."

Under the guiding review standard on appeal, we may not disturb the trial court's broad discretion unless it has been manifestly abused. *State* v. *Delgado*, 243 Conn. 523, 531, 707 A.2d 1 (1998). In reviewing whether a trial court has exercised its discretion consistent with a defendant's right to a fair trial, courts have looked to the following factors: "(1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a

reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Internal quotation marks omitted.) Id., 532–33.

Although the cases here were joined for trial, each proceeded in orderly sequence starting with the first in time. In the first case tried, the July 18, 2002 robbery of the Crown Budget Market in Bridgeport, the defendant was found guilty of robbery in the first degree. In the second case tried, the July 20, 2002 robbery of the Wonder Bread Thrift Shop in Bridgeport, the jury was not able to agree, and a mistrial was declared. In the third case tried, the July 20, 2002 robbery of the Lido's Deli in Stratford, the defendant was convicted of attempt to commit robbery.

In each case, although the perpetrator had implied that a firearm was in a bag he carried, different victims at different locations and different eyewitnesses were involved with each separate offense. Evidence as to each separate offense was introduced in sequence, and both the court and the jury were informed by the prosecutor at each point in the trial when evidence as to each charge had been concluded in the case-in-chief. We therefore conclude that the easily distinguishable factual scenarios and orderly presentation of evidence minimized the possibility that the jury might use evidence applicable only to one charge improperly to find him guilty on another. Although in each case the defendant threatened the use of force by implying that he had a firearm in a bag, the evidence was not particularly brutal or shocking. We therefore conclude, that because of the lack of highly brutal or shocking evidence in any of the three cases, there was no likelihood that joinder resulted in the jury's inability to fairly and dispassionately consider the evidence in each case. The trial was neither long nor complex, consisting of three days of evidence. Finally, the court's instructions to the jury

emphasized that the separate cases were being tried together and that where evidence was admitted on one incident and not on others, it was to be considered only with respect to the incident in which it was admitted. The fact that the jury could not agree on the defendant's guilt as to one of the three robberies, resulting in a mistrial, is a good indication that it was able to separate each discrete incident.

We therefore conclude that the court did not abuse its discretion in joining all three informations for trial.

II

We next turn to the defendant's claim that the trial court improperly permitted the jury to consider facts from each of the robberies as prior bad acts to establish intent and an element of each individual crime alleged in the consolidated trial.

The state first presented evidence in the Crown Budget Market case, then in the Wonder Bread Thrift Shop case and finally in the case relating to the robbery at Lido's Deli.

At the close of evidence in the first case, the state moved the court that evidence of each alleged robbery be admissible in the trial of the other robberies on the issues of common scheme and intent. The defendant preserved the issue for appeal by objecting to the "overlapping of the cases in any way . . . for any reason."[1]

In a preliminary charge to the jury prior to the commencement of any evidence, which was repeated, the court reminded the jury of its duty to keep the evidence separate and distinct unless instructed that something

---

[1] He did concede admissibility, however, for the purpose of permitting Detective Joette Devan's statement that she included the defendant's photograph in the array shown to the victim in the Lido's Deli robbery because the defendant fit the description given and because the robber in all three robberies had concealed his right hand in a paper bag.

from one case could be used in another. As a part of its ruling on the state's motion, the court permitted certain evidence from the first case tried, the Crown Budget Market robbery, to be used by the jury in the second case, the Wonder Bread Thrift Shop robbery. The court told the jury: "I'm going to allow you to consider as part of the second file, which we've just completed, the alleged misconduct of the defendant in the first incident, the Crown [Budget] Market, from the defendant's gesturing with the paper bag over his right hand through his running out of the store."

The court charged: "This evidence is not being admitted to prove the bad character of the defendant or his tendency to commit criminal acts. Such evidence is being admitted solely to establish a necessary element of the crime charged in the second case, namely, robbery in the first degree. That is, whether in the course of the commission of the crime the perpetrator threatened the use of what he represented by his words or conduct to be a firearm and is also being admitted to show . . . or establish the existence of intent, which is also a necessary element of the crime charged in the second case, namely, robbery in the first degree.

"You may not consider such evidence as establishing a predisposition on the part of the defendant to commit the crime charged or to demonstrate a criminal propensity. You may consider such evidence if you believe it and further find it logically, rationally and conclusively supports the issues for which it is being offered by the state, but only as it may bear upon the issues of intent and element of the crime.

"On the other hand, if you do not believe such evidence or even if you do, if you find that it does not logically, rationally and conclusively support the issues for which it is being offered by the state, namely, intent

and element of the crime, then you may not consider the testimony for any purpose.

"Now, also, I am allowing you to consider as part of the first file the alleged misconduct of the defendant in the second incident, the Wonder Bread, from the defendant's gesturing with a paper bag over his right hand to his running out of the store. This evidence is not being admitted to prove the bad character of the defendant or his tendency to commit criminal acts. Such evidence is being admitted solely to show or establish a necessary element of the crime charged in the first case, namely, robbery in the first degree. That is, whether in the course of the commission of the crime, the perpetrator threatens the use of what he represented by his words or conduct to be a firearm, and is also being admitted to show or establish the existence of intent, which is also a necessary element of the crime charged in the first case, namely, robbery in the first degree.

"You may not consider such evidence as establishing a predisposition on the part of the defendant to commit the crime charged or to demonstrate a criminal propensity. You may consider such evidence if you believe it and further find it logically, rationally and conclusively supports the issue for which [it] is being offered by the state, but only as it may bear here on the issue of intent and element of the crime."

The court later charged the jury that it similarly could use the evidence from the first and second cases in the third case presented concerning the robbery of Lido's Deli.

At the close of the third case, the Lido's Deli robbery, the court instructed the jury in part: "I'm allowing you to consider as part of this third file, the Lido's Deli, the alleged misconduct of the defendant in the first file, Crown Market, and the second file, Wonder Bread."

The effect of the court's several limiting instructions, before the start of evidence, after the first, second and third files, and in the final charge at the end of the case,[2] reiterated to the jury that the evidence of the bag brandishing could be used in any of the cases for the limited purpose of proving intent and for the purpose of proving an element of the crime, threatening with a firearm. Repeatedly, the court instructed the jury that such evidence was "not being admitted to prove the bad character of the defendant or his tendency to commit criminal acts."

The court admitted the evidence to show a necessary element of the crime of attempt to commit robbery in the first degree: "That is, whether in the course of the commission of the crime, the perpetrator used or threatened the use of what he represented by his words or conduct to be a firearm. And it is also being admitted to show or establish the existence of intent." The court found that the probative value of that evidence outweighed the prejudicial effect.

The defendant does not challenge on appeal the court's charge but does challenge the cross admissibil-

---

[2] During its final charge, the court instructed the jury, in relevant part: "As you will recall, I allowed you to consider as part of the first file, the Crown Market file . . . the alleged misconduct of the defendant in the second file, Wonder Bread, and the third file, Lido's Deli, from the defendant's gesturing with a paper bag over his right hand through his running out of the store." The court later went on to charge: "I allowed you to consider, as part of the second file, the alleged misconduct of the defendant in the first incident, the Crown Market, and the third incident, Lido's Deli, from the defendant's gesturing with a paper bag over his right hand through his running out of the door." The court also instructed: "The following charge relates only to the third case. As you will remember, I allowed you to consider as part of the third file, the alleged misconduct of the defendant in the first incident, the Crown Market, and the second incident, Wonder Bread, from the defendant's gesturing with a paper bag over his right hand through his running out of the store." During each portion of this instruction, the court also informed the jury: "This evidence was not admitted to prove the bad character of the defendant or his tendency to commit criminal acts."

ity of the evidence. Both the defendant and the state agree that the standard of review requires us to determine whether the court abused its discretion. See *State* v. *Baldwin*, 224 Conn. 347, 354–55, 618 A.2d 513 (1993). "[E]very reasonable presumption should be given in favor of the court's ruling. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . [T]he burden to prove the harmfulness of an improper evidentiary ruling is borne by the defendant . . . [who] must show that it is more probable than not that the erroneous action of the court affected the result." (Citation omitted; internal quotation marks omitted.) *State* v. *Meehan*, 260 Conn. 372, 393, 796 A.2d 1191 (2002).

Analyzing the court's rulings in which the court admitted use of the prior and subsequent misconduct testimony to determine intent and the necessary element, namely, that in the course of the commission of the crime, the defendant used a bag represented by his words or conduct to contain a hidden firearm, we conclude that the court did not abuse its discretion in the admission of this evidence. The defendant argues that other than the identity of the perpetrator there was not an element of the crime sufficiently in dispute to justify the use of the evidence to prove intent. The defendant did not concede that he possessed the requisite intent. It was, therefore, the state's obligation to prove that he wrongfully took or attempted to take property of another "with intent to deprive another of property or to appropriate the same to himself or a third person . . . ." General Statutes § 53a-119. In addition, to prove robbery in the first degree or attempt to commit robbery in the first degree, the state was required to prove that the defendant accomplished the larceny forcibly by displaying or threatening the use of what he represented by his words or conduct was a firearm. The defendant

did not say that he had a gun, so the brandishing of the paper bag in his hand and his demand for money, together with the other surrounding circumstances, would need to be accepted by the jury as the conduct required for conviction. Both the intent to steal and the intent to use the bag to threaten the use of force required inferences to be drawn by the jury. We therefore agree with the state that the court was well within its discretion to admit evidence from each case for use in the others to prove the defendant's larcenous intent and his intent to use the bag in each instance to threaten the use of a firearm to bring about the crime. The evidence was relevant for these purposes.

Connecticut Code of Evidence § 4-5 (b) makes evidence of uncharged misconduct admissible if it is so connected with the charged misconduct to be relevant to intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, an element of the crime or corroboration of crucial testimony. See also C. Tait, Connecticut Evidence (3d Ed. 2001) § 4.19.2, pp. 232–33.

Instead of admitting the evidence on both intent and common scheme as the state had offered, the court instructed the jury to consider the evidence only on intent, omitting any reference to common scheme, but adding a permitted use of the evidence that the state had not requested, namely, "element of the crime."

Our review standard on an evidentiary ruling admitting other misconduct is guided by certain well settled principles.

"As a general rule, evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused. . . . Such evidence cannot be used to suggest that the defendant has a bad character or a propensity for criminal behavior." (Citations omitted.) *State* v. *Kulmac,* 230

Conn. 43, 60, 644 A.2d 887 (1994). Exceptions to the general rule exist, however, "if the purpose for which the evidence is offered is to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime." (Internal quotation marks omitted.) *State* v. *Adorno*, 45 Conn. App. 187, 191–92, 695 A.2d 6, cert. denied, 242 Conn. 904, 697 A.2d 688 (1997); see *State* v. *Figueroa*, 235 Conn. 145, 162, 665 A.2d 63 (1995). "We have developed a two part test to determine the admissibility of such evidence. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. . . . Second, the probative value of the evidence must outweigh its prejudicial effect." (Internal quotation marks omitted.) *State* v. *Kulmac*, supra, 61; see *State* v. *Figueroa*, supra, 162.

"The primary responsibility for making these determinations rests with the trial court. We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." *State* v. *Kulmac*, supra, 230 Conn. 61; see *State* v. *Figueroa*, supra, 235 Conn. 162; *State* v. *Mooney*, 218 Conn. 85, 127, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991).

The court found the probative value outweighed any prejudicial effect. In the Crown Budget Market robbery, the defendant pushed his bagged hand into the store manager's chest and warned him not to move or everyone in the store would be killed. The defendant then proceeded to empty the cash register.

In the Wonder Bread Thrift Shop robbery, a robber pointed a bagged hand at the bakery employee at the cash register, warned her not to move and then took all of the cash in the cash register and left the premises. In the Lido's Deli attempted robbery, the defendant entered the store with a bag over his right hand,

demanded money from the employee behind the cash register and threatened her life and that of another employee if his demand was not satisfied. The robbery was aborted when a third employee emerged from a back room and threw things at the defendant, who then left.

The defendant could not have been held criminally liable for robbery or attempt to commit robbery in the first degree if he had entered the stores with a bag for some lawful, innocuous purpose. The necessary element that the robbery be accomplished by threat of force, evidenced by the use or the threatened use of what he represented by his words or conduct was a firearm, inextricably was coupled with the necessary element of criminal intent to take the property of another unlawfully by the threatened use of force. The evidence from each case was therefore relevant in establishing the defendant's intentional criminal purpose.

Having determined that the court properly found the challenged evidence to be relevant to the circumstances encompassed by the exceptions to the general rule on nonadmissability of other misconduct, we next turn to whether the court abused its discretion in determining that the probative value of the evidence outweighed the prejudicial effect.

"We recognize that this balancing process is an inherently difficult one, and will reverse the trial court's decision only when it is manifest that an abuse of discretion or an injustice has occurred." (Internal quotation marks omitted.) *State* v. *Mooney*, supra, 218 Conn. 127. Here, the court instructed the jury several times concerning the limited use of the evidence, that it could not be used to suggest that the defendant had a bad character or propensity for criminal behavior, but that it only could be used for the limited purposes of estab-

lishing intent and the threatened use of a weapon. We therefore conclude that the court did not abuse its discretion.

### III

The defendant next claims that he did not receive fair notice of the part B information[3] filed by the state and that the court, therefore, improperly denied his motion to dismiss it.

"We must first consider the standard of review where a claim is made that the court failed to grant a motion to dismiss. Our standard of review of a trial court's . . . conclusions of law in connection with a motion to dismiss is well settled. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts . . . . Thus, our review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *State* v. *Vitale*, 76 Conn. App. 1, 14, 818 A.2d 134, cert. denied, 264 Conn. 906, 826 A.2d 178 (2003).

In initial part B informations filed on October 25, 2002, the state charged the defendant with being a persistent dangerous felony offender on the basis of a September 9, 1983 conviction of sexual assault in the first degree and a January 13, 1989 conviction of robbery in the first degree. The state amended the part B information two additional times. The first amendment, filed November 14, 2002, changed the predicate crimes to a February 8, 1989 conviction of robbery in the second degree and a January 13, 1989 conviction of robbery in the first degree. The next amendment, filed November

---

[3] The state filed identical part B informations in each case. Because the defendant's sentence was enhanced only in the case charging him with robbery in the first degree, his claim on appeal is limited to the part B information in that case.

21, 2002, changed the predicate crimes to two convictions of robbery in the first degree, both occurring on January 13, 1989. At the November 21, 2002 probable cause hearing, however, the state decided to proceed on the November 14, 2002 amended part B information and not the November 21, 2002 amendment.

After the jury found the defendant guilty of one count of robbery in the first degree and one count of attempt to commit robbery in the first degree in connection with the Crown Budget Market and Lido's Deli incidents, the defendant waived a jury trial and proceeded to a court trial on the part B information.

After the state presented evidence, the defendant moved to dismiss the part B information because he claimed that he never had received proper notice of it. The defendant contends that although he was advised of the first part B information against him outside the judge's presence as our rules of practice require, he never was advised formally by the clerk of the amended part B information. Therefore, he argues, because he did not receive notice that accorded with Practice Book § 37-11, the court improperly denied his motion to dismiss the part B information. We disagree.

Because the state charged the defendant with being a persistent felony offender pursuant to § 53a-40 (a) and, by alleging two previous qualifying convictions, was seeking a sentence of life imprisonment under § 53a-40 (h), a hearing in probable cause was held as required by General Statutes § 54-46a. In ruling on the defendant's motion to dismiss the part B information, the court found that the defendant had received actual notice by virtue of the probable cause hearing in which it was made clear that the two predicate crimes which were the basis of the allegation that he was a persistent dangerous felony offender were two prior convictions for robbery. We agree. The clerk's failure to advise the

defendant in violation of Practice Book § 37-11 of the contents of a part B information, where the defendant had received actual notice of the charge and of the predicate felonies on which it was based, appears to be more of a technical violation of the rules of practice rather than a substantial deprivation of any due process right of the defendant to know the nature of the charges against him. Furthermore, the defendant has failed to show how he was prejudiced in any way by the clerk's failure to read to him the November 14, 2002 amended part B information.

The judgments are affirmed.

In this opinion the other judges concurred.