## STATE OF CONNECTICUT *v.* FRANCISCO LINARTE
## (AC 25607)

Bishop, DiPentima and Lavine, Js.

94

Argued January 3—officially released April 15, 2008

*Deborah G. Stevenson*, special public defender, for the appellant (defendant).

*Sarah Hanna*, deputy assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Richard Colangelo*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Francisco Linarte, appeals from the judgment of conviction, rendered after a jury trial, of five counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2)[1] and

---

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

five counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[2] On appeal, he claims that the trial court improperly denied (1) his motion to suppress his confession, (2) his motion for disclosure of certain medical records, (3) his motion in limine to preclude prior misconduct, (4) his request to recall a state's witness after the close of the state's evidence, and (5) his motions for a judgment of acquittal and for a new trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Beginning in 1993, from the time they were two years old, twin sisters K and E[3] spent three to four nights a week in the care of the defendant's mother, who operated a day care business in her home. In August, 2002, when the girls were eleven, K disclosed to her mother that the defendant had been sexually assaulting her from around the time she was five years old. According to K, it was her fear that the defendant would begin to abuse a five year old girl who recently had started to attend the day care that compelled her to divulge the abuse to her mother.

K's mother took her to Norwalk Hospital, where K told Officer Susan Holland of the Norwalk police department that the defendant had sexually assaulted her over

[2] General Statutes § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony for a violation of subdivision (1) or (3) of this subsection and a class B felony for a violation of subdivision (2) of this subsection."

We note that the conduct that gave rise to the risk of injury charges allegedly occurred in June, July and August, 2002. Although § 53-21 has been amended since then, in the interest of simplicity, we refer to the current revision of § 53-21.

[3] In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victims or others through whom their identities may be ascertained. See General Statutes § 54-86e.

a period of years, most recently during the past two weeks. E subsequently told Holland that the defendant also had abused her over a period of years. The girls were examined by a pediatric nurse at Yale-New Haven Hospital. Their ensuing interview at the Children's Connection in Norwalk was observed by Sergeant Kenneth Riley of the Norwalk police department and investigator Yezenia Molina of the department of children and families. From the interview, Riley, who led the investigation, identified the defendant as a suspect.

On August 30, 2002, Riley and police Officer Carlton Giles drove to the defendant's home and requested that he speak with them. Giles, a youth officer, was familiar with the defendant through his involvement with the DARE program at the defendant's school. The defendant voluntarily accompanied the officers to the police station. When Riley asked the defendant's mother if she wanted to accompany them, she indicated that she would drive herself to the police station later.

At the police station, the officers ascertained that the defendant was an eighteen year old high school graduate. In keeping with departmental procedure, Riley advised the defendant of his *Miranda*[4] rights, provided him with a *Miranda* waiver form listing his *Miranda* rights and asked him to read the form aloud. When the defendant had difficulty reading the text back to Riley, Riley read to the defendant, asking him if he understood each paragraph of the waiver form. The defendant said that he understood and indicated as much by signing his initials after each paragraph. The defendant then signed the waiver form.

After Riley questioned the defendant about his interactions with K and E, the defendant admitted to having had sexual contact with K and E over a period of years.

---

[4] See *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The defendant confessed that two to three times per week, while his mother was sleeping, "I would grind K from behind. . . . We started kissing, rubbing and started placing my penis in her vagina and she began placing my penis in her vagina." He also stated: "When I was about thirteen years old, I used to rub against [K] with my clothes on. I probably put my penis in E's butt, but I'm not sure. About a month ago was the last time K placed my penis inside her vagina . . . ." Joining the interview between Riley and the defendant, Molina heard the defendant say that "he had sexual intercourse with . . . both girls." Riley typed and printed the defendant's confession, after which Giles read it back to the defendant. Identifying the statement as his own, the defendant signed it. Riley would later testify that the defendant appeared relieved after telling his story.

The defendant was arrested in November, 2002. At trial in March, 2004, K testified that during June, July and August, 2002, the defendant entered the room where she slept at night, got on her bed, removed her underwear and penetrated her vagina with his penis. E testified that in July and August, 2002, the defendant touched and penetrated her vagina and her anus with his hands and penis. K testified that the assaults happened approximately 75 percent of the time she stayed at the day care and that she could not remember any time period during which the defendant was not sexually assaulting her. E testified that the sexual assaults happened "pretty much all [the] time" she was at the day care.

In diametric contradiction to his confession, the defendant denied at trial that he had ever touched K or E sexually. He testified that he had confessed because Riley and Giles told him he could not leave the interview at the police station until he admitted that he had molested the girls. On March 16, 2004, the jury found the defendant guilty of five counts of sexual

assault in the first degree in violation of § 53a-70 (a)
(2) and five counts of risk of injury to a child in violation
of § 53-21 (a) (2). He was sentenced to forty years of
imprisonment. This appeal followed. Additional facts
will be set forth as necessary.

I

The defendant first claims that the court improperly
denied his motion to suppress his confession. Specifi-
cally, the defendant argues that the court should have
granted his motion to suppress the confession because
(1) the state failed to prove, pursuant to *Miranda* v.
*Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694
(1966), that his waiver was voluntary, knowing and
intelligent, (2) the court improperly shifted to him the
burden of proving that the *Miranda* waiver was invalid,
and (3) his confession was coerced in violation of his
federal and state due process rights. We agree with
none of these contentions.

"On appeal, we apply a familiar standard of review
to a trial court's findings and conclusions in connection
with a motion to suppress. A finding of fact will not be
disturbed unless it is clearly erroneous in view of the
evidence and pleadings in the whole record . . . . The
conclusions drawn by the trial court will be upheld
unless they are legally and logically inconsistent with
the evidence. . . . [W]e engage in a careful examina-
tion of the record to ensure that the court's decision
was supported by substantial evidence. . . . We give
great deference to the findings of the trial court because
it weighs the evidence before it and assesses the credi-
bility of witnesses." (Internal quotation marks omitted.)
*State* v. *Stevenson*, 70 Conn. App. 29, 49, 797 A.2d 1
(2002), rev'd on other grounds, 269 Conn. 563, 849 A.2d
626 (2004), after remand, 85 Conn. App. 811, 858 A.2d
876 (2004).

## A

The defendant alleges that the state failed to meet its burden of proving that his waiver of rights was voluntary, knowing and intelligent pursuant to *Miranda* v. *Arizona*, supra, 384 U.S. 436. On appeal, the defendant claims that the court's conclusion that he voluntarily, knowingly and intelligently waived his rights was improper because his intellectual limitations render him incapable of effecting a valid waiver.

"[T]o show that the defendant waived his privilege against self-incrimination, the state must prove by a preponderance of the evidence that he knowingly and intelligently waived his constitutional right to remain silent. . . . The question is not one of form, but rather whether the defendant . . . knowingly and voluntarily waived the rights delineated in the *Miranda* case. . . . [T]he question of waiver must be determined on the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. . . . The issue of waiver is factual, but our usual deference to the finding of the trial court on questions of this nature is qualified by the necessity for a scrupulous examination of the record to ascertain whether such a finding is supported by substantial evidence. . . .

"Whether the defendant has knowingly and intelligently waived his rights under *Miranda* depends in part on the competency of the defendant, or, in other words, on his ability to understand and act upon his constitutional rights. . . . Factors which may be considered by the trial court in determining whether an individual had the capacity to understand the warnings include the defendant's experience with the police and familiarity with the warnings . . . his level of intelligence, including his IQ . . . his age . . . his level of education . . . his vocabulary and ability to read and write

in the language in which the warnings were given . . . intoxication . . . his emotional state . . . and the existence of any mental disease, disorder or retardation. . . . The burden upon the state to prove a valid waiver of *Miranda* rights is proof by a fair preponderance of the evidence and not proof beyond a reasonable doubt. . . . In considering the validity of this waiver, we look, as did the trial court, to the totality of the circumstances of the claimed waiver." (Citation omitted; internal quotation marks omitted.) *State* v. *Wright*, 76 Conn. App. 91, 99–100, 818 A.2d 824 (2003), cert. denied, 267 Conn. 911, 840 A.2d 1175 (2004).

In June, 2003, the defendant filed a motion to suppress his signed confession, claiming that his *Miranda* waiver and subsequent confession were not voluntary, knowing and intelligent. The court held a hearing on the motion to suppress on February 6 and 11, 2004. In support of the proposition that the defendant's limitations rendered him incapable of knowingly waiving his rights, defense counsel called the defendant and his mother, who both testified that the defendant experienced difficulty reading. No expert witness or medical testimony was offered at the suppression hearing.[5]

The court also heard testimony from the state's witnesses, Riley and Giles. Riley testified that the defendant voluntarily accompanied the officers to the police station, voluntarily initialed each paragraph on the *Miranda* waiver form and appeared to understand fully

---

[5] At trial, the defense called clinical psychologist Robert A. Novelly as an expert witness. The jury heard Novelly testify that he had administered cognitive tests that placed the defendant's intellectual capacity, including his reading comprehension ability, in the low average range. On the basis of his examinations of the defendant in June, 2003, and in February, 2004, Novelly diagnosed the defendant with reading and auditory comprehension disorders and described the defendant as socially introverted. In a letter, submitted after trial and before sentencing, Novelly depicted the defendant as having "a congenital and severe impairment in [l]anguage [p]rocessing . . . ."

the conversation that followed, including his confession. In response to questions from defense counsel about the defendant's condition, Riley testified that the defendant did not appear to be confused about what was being said to him or about what he was saying. Giles' testimony confirmed that Riley had read the defendant his *Miranda* rights and that the defendant never indicated that he did not understand his rights or that he did not want to speak to the officers.

At the conclusion of the suppression hearing, the court denied the motion to suppress, stating: "[The defendant] is able to understand questions. He is able to understand his rights, as far as I can see. He was not under any undue influence, and I am going to deny the motion to suppress at this point." In its memorandum of decision, the court noted that the defendant's prompt responses to questions asked of him at trial belied the theory that he was incapable of effecting a valid waiver. The court also concluded that the defendant "acknowledge[d] that he signed the statement admitting the offenses . . . [that] he understood he was admitting the offenses by signing the statement" and that nothing in the record effectively nullified the evidence offered by the state that the defendant's waiver was valid. Our examination of the record leads us to concur with the court's conclusions.

Our case law establishes that evidence of learning difficulties, without more, is insufficient to invalidate a waiver of rights. "Even some degree of mental retardation does not by itself prevent a defendant from knowingly and intelligently waiving his *Miranda* rights." (Internal quotation marks omitted.) *State* v. *DaEria*, 51 Conn. App. 149, 168, 721 A.2d 539 (1998); see *State* v. *Usry*, 205 Conn. 298, 306–307, 533 A.2d 212 (1987) (valid waiver of *Miranda* rights despite defendant's young age, low IQ and status as special education student); *State* v. *Boscarino*, 204 Conn. 714, 744, 529 A.2d 1260

(1987) (valid waiver of *Miranda* rights despite testimony that defendant had low IQ and other deficiencies allegedly rendering him incapable of waiving his rights).

The defendant refers to *State* v. *Wilson*, 183 Conn. 280, 439 A.2d 330 (1981), in which our Supreme Court held that the state did not meet its burden of proving that the defendant had effected a knowing and intelligent *Miranda* waiver. In *Wilson*, the court concluded that nothing in the record indicated that the defendant had waived his rights. Id., 287. Not only had the police officers in that case failed to provide the defendant with a *Miranda* waiver form, but the defendant had not stated that he was willing to answer questions. Id., 282–83.

The case at bar is distinguishable. First, the defendant signed a waiver form and told Riley that he understood it. "[A] defendant's express written and oral waiver is strong proof that the waiver is valid." (Internal quotation marks omitted.) *State* v. *Williams*, 65 Conn. App. 59, 76, 782 A.2d 149, cert. denied, 258 Conn. 923, 782 A.2d 1251 (2001). Second, the defendant voluntarily confessed and then avouched and signed his confession. Additionally, the defendant neither requested an attorney nor appeared to be disoriented, confused or under the influence of drugs or alcohol. See *State* v. *Stevenson*, supra, 70 Conn. App. 51. Contrary to the defendant's assertions, it was reasonable for the court in this case to judge the defendant capable of voluntarily, knowingly and intelligently waiving his *Miranda* rights.

We believe that the court properly considered the totality of the circumstances specific to this case, including the defendant's age, education, intelligence and ability to read and write in English, in determining that the defendant's waiver was knowing and intelligent. After carefully reviewing the record, we uphold

the court's conclusion that the state met its burden of demonstrating that the defendant voluntarily, knowingly and intelligently waived his *Miranda* rights.

## B

The defendant next claims that the court improperly shifted from the state to him the burden of proving that his waiver and confession were not voluntary. According to the defendant, the court's declaration that "the defendant has not established that the execution of the waiver was not voluntary" implied that the court had placed the burden of proving that the waiver was involuntary on him.

There is no question that "[t]he state has the burden of proving by a preponderance of the evidence that the defendant voluntarily, knowingly and intelligently waived his *Miranda* rights." (Internal quotation marks omitted.) *State* v. *Williams*, supra, 65 Conn. App. 72. It is clear to us, however, that in this case, the court determined that the state had met its burden of proof before it considered the defendant's counterproof. The court stated: "[T]he fact that the defendant signed and initialed the waiver indicates voluntariness . . . . The defendant's maturity, he was almost nineteen, his education, he graduated high school in Norwalk, he graduated with his fellow classmates . . . on [the] appropriate date. . . . The defendant was also able to sustain employment, including items that required some ability to understand and respond to what was put to him. . . . Under these circumstances, the state has established that, and the defendant has not established that the execution of the waiver was not voluntary. The defendant understood the execution of the waiver."

It is clear to us that the court conveyed that the state had the burden of proving that the defendant's waiver was voluntarily given. After making specific findings of fact about the defendant's maturity, experience and

intellectual abilities, in accordance with the evidence presented at trial, the court concluded that the state had met its burden of proof. See *State* v. *Rice*, 105 Conn. App. 103, 115, 936 A.2d 694 (2007), cert. denied, 285 Conn. 921, 943 A.2d 1101 (2008). Additionally, the court declared itself "satisfied that the state has met its burden of proving by a preponderance of the evidence that the defendant was informed of his *Miranda* rights and knowingly and voluntarily waived those rights."

We conclude that the court did not shift from the state to the defendant the burden of proving that the waiver and confession were not voluntary.

C

The defendant asserts that the court's denial of his motion to suppress his confession violated his rights under the due process clause of the federal constitution.[6] Specifically, the defendant claims that because

---

[6] We need not address the defendant's claim that the allegedly coercive conduct of Riley and Giles and the court's denial of his motion to suppress violated his rights under General Statutes § 53a-192 because it was not raised before the trial court. "It is the appellant's responsibility to provide an adequate record for review. . . . [W]e will not decide an appeal on an issue that was not raised before the trial court. . . . To review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge." (Citation omitted; internal quotation marks omitted.) *In re Anna Lee M.*, 104 Conn. App. 121, 124 n.2, 931 A.2d 949, cert. denied, 284 Conn. 939, 937 A.2d 696 (2007).

Likewise, we deem abandoned the defendant's claim that the court's denial of his motion violated his rights under our state constitution. See *State* v. *Schultz*, 100 Conn. App. 709, 730, 921 A.2d 595, cert. denied, 282 Conn. 926, 926 A.2d 668 (2007). Our Supreme Court has "repeatedly . . . emphasized that we expect counsel to employ [the analysis required by *State* v. *Geisler*, 222 Conn. 672, 684–85, 610 A.2d 1225 (1992)] [i]n order to [allow us to] construe the contours of our state constitution and [to] reach reasoned and principled results. . . . When a party fails to analyze these factors separately and distinctly, [w]e have made clear that . . . we are not bound to review the state constitutional claim." (Internal quotation marks omitted.) *State* v. *Jenkins*, 104 Conn. App. 417, 455 n.12, 934 A.2d 281 (2007), cert. granted on other grounds, 285 Conn. 909, 940 A.2d 809 (2008). "[W]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is

the officers failed to accommodate his intellectual limitations, they coerced him into confessing involuntarily.[7]

We evaluate the voluntary nature of the defendant's confession pursuant to federal due process as it has been construed by Connecticut courts. "[T]he use of an involuntary confession in a criminal trial is a denial of due process of law. . . . Furthermore, a criminal defendant is entitled, as a matter of due process, to a reliable, clear-cut determination prior to trial that the confession sought to be introduced by the state was made voluntarily. . . . In Connecticut, the preliminary voluntariness determination is made by the trial court."

required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims. . . . We decline, therefore, to review the plaintiff's claims and deem them abandoned." (Citations omitted; internal quotation marks omitted.) *Hill* v. *Bartels*, 73 Conn. App. 588, 589–90, 808 A.2d 1176 (2002).

The defendant also asserts that his confession should have been suppressed pursuant to the fruit of the poisonous tree doctrine. Because this claim is not adequately briefed, we do not address it.

[7] The defendant also claims that Riley and Giles failed to accommodate his learning disabilities in accordance with § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., when they obtained his confession. The defendant did not raise this issue at trial but seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or, alternatively, under the plain error doctrine. See Practice Book § 60-5. Because this claim is not constitutional in nature, it is not reviewable under *Golding*.

As to the defendant's request for plain error review, "Practice Book § 60-5 provides that we may in the interests of justice notice plain error not brought to the attention of the trial court. . . . Such review is extremely limited. As our Supreme Court has noted, [p]lain error review is reserved for truly extraordinary situations . . . and is not even implicated unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Furthermore, plain error review is appropriate where the record is complete." (Internal quotation marks omitted.) *State* v. *Miller*, 67 Conn. App. 544, 555, 787 A.2d 639, cert. denied, 259 Conn. 923, 792 A.2d 855 (2002). In this claim, the defendant alleges error that was not brought before the trial court. Furthermore, the defendant refers to no error in the record. We cannot conclude that the court's denial of the defendant's motion to suppress was plain error.

(Citations omitted; internal quotation marks omitted.) *State* v. *Correa*, 241 Conn. 322, 327–28, 696 A.2d 944 (1997).

"In order to be voluntary a confession must be the product of an essentially free and unconstrained choice by the maker. . . . If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of the confession offends due process. . . . The determination of whether a confession is voluntary must be based on a consideration of the totality of circumstances surrounding it . . . including both the characteristics of the accused and the details of the interrogation. . . . Factors that may be taken into account, upon a proper factual showing, include: the youth of the accused; his lack of education; his intelligence; the lack of any advice as to his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food and sleep. . . . Under the federal constitution . . . coercive police activity is a necessary predicate to the finding that a confession is not voluntary . . . ." Id., 328, citing *Colorado* v. *Connelly*, 479 U.S. 157, 167, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986).

"The trial court's findings as to the circumstances surrounding [a] defendant's interrogation and confession are findings of fact . . . which will not be overturned unless they are clearly erroneous. . . . On the ultimate issue of voluntariness, however, we will conduct an independent and scrupulous examination of the entire record to ascertain whether the trial court's finding is supported by substantial evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Correa*, supra, 241 Conn. 328–29.

In this case, the only evidence that the police utilized coercion to induce the defendant's confession derives

from the defendant's testimony. Riley, Giles and Molina testified, to the contrary, that the defendant voluntarily accompanied the officers to the station, voluntarily waived his *Miranda* rights and voluntarily confessed, indicating at no time that he wanted to leave or refrain from talking. The court credited this evidence, as well as the officers' testimony that they employed no coercive tactics to induce the defendant's waiver or confession.

It is not this court's function to assess the credibility of witnesses. Rather, "[i]t is the sole province of the trial court to assess the credibility of witnesses." (Internal quotation marks omitted.) *State* v. *Bjorklund*, 79 Conn. App. 535, 550, 830 A.2d 1141 (2003), cert. denied, 268 Conn. 920, 846 A.2d 882 (2004). When the record contains no evidence of threats, promises or coercive or deceptive measures by the police, it is reasonable for the court to conclude that statements were made voluntarily. See *State* v. *Williams*, supra, 65 Conn. App. 76. We therefore conclude that the court properly determined, on the basis of substantial evidence, that the defendant's confession was voluntary.

For the foregoing reasons, we affirm the court's denial of the motion to suppress.

## II

The defendant's second claim is that the court improperly denied his motion for disclosure of the medical[8] and psychiatric records of K, E and their mother.[9]

---

[8] Because "[a] common law privilege for communications made by a patient to a physician has never been recognized in this state"; (internal quotation marks omitted) *State* v. *Anderson*, 74 Conn. App. 633, 653, 813 A.2d 1039, cert. denied, 263 Conn. 901, 819 A.2d 837 (2003); defense counsel was free to subpoena additional medical records at any time. "It is the responsibility of the appellant to provide an adequate record for review. . . ." Practice Book § 61-10; *In re Anna Lee M.*, 104 Conn. App. 121, 124 n.2, 931 A.2d 949, cert. denied, 284 Conn. 939, 937 A.2d 696 (2007). Consequently, the defendant failed to preserve his claim that the court erred in denying his motion to disclose nonpsychiatric medical records.

[9] On appeal, the defendant also contends that the court improperly denied his motion to question the mother of K and E. Contrary to the defendant's

In particular, the defendant asserts that the court should have granted his motion for disclosure, pursuant to the confrontation clause of the sixth amendment to the United States constitution, because he made an adequate showing that the requested records might substantiate his theory that K and E suffered from Munchausen by proxy syndrome,[10] thereby exculpating him.[11] We disagree.

On February 23, 2004, the defendant filed a motion for disclosure of the medical and psychiatric records of K, E and their mother, claiming that he needed the requested records "to show that during the time period before any allegations were made against the defendant, the alleged victims' mother continually sought medical treatment for the alleged victims for a variety of medical conditions and diseases, completely unrelated to any alleged sexual assault, that may not have ever existed." Offering no proof, the defendant theorized that frequent visits to the doctor might signify a "pathologically obsessive pattern that may have critical bearing on the credibility of allegations made against the defendant."

assertions, the record discloses that the defendant never made, and the court never denied, a motion to question the mother of K and E. Consequently, the defendant's claim that the court improperly denied his motion to question the victims' mother is not reviewable.

[10] Munchausen by proxy syndrome is characterized by fabrications of symptoms or induction of signs of disease, leading to unnecessary investigations and interventions. T. Stedman, Medical Dictionary (28th Ed. 2006) p. 1906.

[11] Although the defendant also asserts that the court should have granted his motion for disclosure pursuant to the due process clause of the fourteenth amendment to the United States constitution, we address that claim in light of the confrontation clause of the sixth amendment to the federal constitution, pursuant to our determination in State v. Rosado, 52 Conn. App. 408, 414 n.10, 726 A.2d 1177 (1999), in which "[w]e decline[d] to review separately the defendant's due process claim because our Supreme Court's decision in State v. D'Ambrosio, 212 Conn. 50, 57 n.5, 561 A.2d 422 (1989), cert. denied, 493 U.S. 1063, 110 S. Ct. 880, 107 L. Ed. 2d 963 (1990), establishe[d] that this claim is subsumed by our analysis of the defendant's right to confrontation claim."

After hearing arguments, the court denied the motion for disclosure, finding no reasonable grounds for believing that the records contained exculpatory information. The court stated: "There has not, as of now, been any showing that would compel me . . . to disclose [or] that would compel me to even do an in camera inspection." The court, however, ordered the state to subpoena the requested records so that they would be readily available in case the defendant made a sufficient showing at a later time.[12] Additionally, the defendant had access to all of the records contained in the state's file.

During his cross-examinations of K and E, defense counsel inquired into their medical histories. This line of questioning, which educed recollections of broken bones and Lyme disease, prompted defense counsel to renew his motion to disclose medical and psychiatric records. The court again denied the motion, stating that "unless you have some expert to tie this all up and to cause this to be a bona fide issue concerning the matters that are on trial, I'm hard-pressed to let this in. I think it invites speculation . . . . There has to be something more than speculation . . . and I just don't see how you've made the jump from one to the other."

The abuse of discretion standard of review applies to a trial court's decision about the relevance and admissibility of evidence. *State* v. *Lindstrom,* 46 Conn. App. 810, 818, 702 A.2d 410, cert. denied, 243 Conn. 947, 704

[12] The court stated: "In terms of the medical record request, these are my orders right now. . . . I am going to order the state to use due diligence to know and be informed of the names and addresses of all treating physicians of the child complainants. That would include medical, counseling and psychological. I am going to order the state to subpoena those records under seal from one month prior to the date alleged in the information, so that would be May, 2002, to the present. . . . At this point, I am not inclined to conduct an in camera examination, but . . . if I reconsider and I think there has been a sufficient showing or other grounds . . . I will notify counsel."

A.2d 802 (1997). "The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) Id. Appellate review of the court's decision to limit the defendant's access to the witnesses' confidential records, however, must take into account the recognized principle that "such a restriction implicates the defendant's constitutional right to impeach and discredit state witnesses." (Internal quotation marks omitted.) *State* v. *Bruno*, 236 Conn. 514, 532, 673 A.2d 1117 (1996).

"The sixth amendment to the constitution of the United States guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him. . . . [T]he primary interest secured by confrontation is the right of cross-examination . . . [which] is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but . . . has traditionally been allowed to impeach, *i.e.*, discredit the witness." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Esposito*, 192 Conn. 166, 178–79, 471 A.2d 949 (1984). "It is axiomatic [however] that the right to confrontation is not absolute. . . . The confrontation clause does not . . . suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . The constitution does not require that a defendant be permitted to present every piece of evidence that he wants." (Citations omitted; internal quotation marks omitted.) *State* v. *Lindstrom*, supra, 46 Conn. App. 820.

"It is well settled in this state that before a criminal defendant may obtain an in camera inspection of a witness' confidential records for purposes of impeachment, he or she must first demonstrate that there is reasonable ground to believe that the failure to produce the information is likely to impair the defendant's right of confrontation such that the witness' direct testimony should be stricken." (Internal quotation marks omitted.) *State* v. *Bruno,* supra, 236 Conn. 522–23. "[W]e require the defendant . . . to adduce a factual basis from which the trial court may conclude that there is a reasonable ground to believe that the records will reveal that . . . [the witness' mental problem] affected his testimonial capacity to a sufficient degree to warrant further inquiry." (Internal quotation marks omitted.) Id., 523.

In this case, the court determined that the defendant failed to adduce a factual basis to support his contention that the requested records would implicate the testimonial capacity of K and E. We agree with this determination. Because the defendant cited no facts that supported his theory of a pathologically obsessive pattern, he provided no basis from which the court reasonably could conclude that anything contained in the requested records would call K's and E's testimonial capacity into question. "A criminal defendant does not have a right to conduct a general fishing expedition into a witness' privileged records." (Internal quotation marks omitted.) *State* v. *Pratt,* 235 Conn. 595, 610, 669 A.2d 562 (1995).

In light of the record before us, we conclude that the court appropriately limited the scope of the defendant's discovery to records relevant to the charges in the information. We are not inclined to conjure up mental abnormality out of gossamer illusions. See *State* v. *Esposito,* supra, 192 Conn. 180. Furthermore, the court did not deny the defendant access to medical or psychiatric

information by alternative means. The defense counsel's cross-examination of K and E afforded him the opportunity to inquire into their medical histories. Consequently, we conclude that the court did not abuse its discretion in denying the defendant's motion to disclose the medical and psychiatric records of K, E and their mother.

### III

The defendant's third claim is that the court improperly denied his motion in limine to preclude prior misconduct evidence. The defendant argues that certain witness testimony alleging prior sexual misconduct unfairly prejudiced him by arousing the emotions of the jury. We do not agree.

On March 3, 2004, the defendant filed a motion in limine regarding the preclusion of anticipated evidence. Pursuant to § 4-5 of the Connecticut Code of Evidence,[13] this motion requested the preclusion of any evidence of sexual assaults on K and E by the defendant not listed in the information. On March 8, 2004, the court heard arguments on this matter. The defendant asked the court to preclude as prejudicial any mention of prior sexual misconduct on his part. In response, the state proffered that prior misconduct evidence may be admitted to demonstrate a defendant's motive. We agree with the state. In *State* v. *James*, 211 Conn. 555, 578, 560 A.2d 426 (1989), our Supreme Court held that evidence of prior sexual misconduct perpetrated by a defendant on the same victim was admissible to illustrate that "the defendant had a particular sexual interest in the

[13] Connecticut Code of Evidence § 4-5 provides that "[e]vidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character or criminal tendencies of that person . . . [but that] [e]vidence of other crimes, wrongs or acts of a person is admissible . . . to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony."

[victim] . . . ." Id. In this case, the court ruled that the admission of prior misconduct evidence would be limited to establishing the defendant's motive: "I'm going to allow the state to question the witness[es] according to the proffer just made."

"Our review standard on an evidentiary ruling admitting other misconduct is guided by certain well settled principles. As a general rule, evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused. . . . Such evidence cannot be used to suggest that the defendant has a bad character or a propensity for criminal behavior. . . . Exceptions to the general rule exist, however, if the purpose for which the evidence is offered is to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime. . . . We have developed a two-part test to determine the admissibility of such evidence. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. . . . Second, the probative value of the evidence must outweigh its prejudicial effect. . . . The primary responsibility for making these determinations rests with the trial court. We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Smith*, 88 Conn. App. 275, 285–86, 869 A.2d 258, cert. denied, 273 Conn. 940, 875 A.2d 45 (2005).

The defendant alleges that the state improperly used the testimony at issue to circumstantiate his propensity to commit the crimes charged. The court allowed admission of prior misconduct testimony, however, only as it related to the defendant's motive or sexual interest in the victims. In observation of this limitation, the prosecutor did not delve into gratuitous detail about

the alleged sexual abuse but, rather, confined his examination of K and E to specific questions pertaining to what type of abuse had occurred and when and where it had taken place. Because the prior misconduct evidence was relevant and material to the defendant's motive, the first part of the two part *Smith* test is satisfied.

Turning to the second part of the *Smith* test, which is whether the probative value of the evidence outweighed its prejudicial effect, "[w]e recognize that this balancing process is an inherently difficult one, and will reverse the trial court's decision only when it is manifest that an abuse of discretion or an injustice has occurred." (Internal quotation marks omitted.) Id., 287. "[W]e do not . . . requir[e] a trial court to use some talismanic phraseology in order to satisfy this balancing process. Rather . . . in order for this test to be satisfied, a reviewing court must be able to infer from the entire record that the trial court *considered* the prejudicial effect of the evidence against its probative nature before making a ruling." (Emphasis in original; internal quotation marks omitted.) *State* v. *James G.*, 268 Conn. 382, 395, 844 A.2d 810 (2004).

It is clear that the court in this case properly considered the prejudicial effect of the evidence at issue before making a ruling. The court heard arguments on the motion, evaluated offers of proof and precluded references to prior misconduct that did not pertain to motive. Although the defendant insists that the prejudicial effect of the testimony at issue outweighed its probative value, the court deemed the evidence relevant to the defendant's motive and, therefore, admissible. In light of the court's appropriate assessment of the import of prior misconduct evidence, we conclude that the court did not abuse its discretion when it denied the defendant's motion in limine.

## IV

The defendant next claims that the court improperly denied his request to question Molina about potentially exculpatory evidence after the close of the state's evidence. Specifically, the defendant argues that the court should have allowed him, in the presence of the jury, to question Molina about a letter, in which she stated that the allegations of sexual assault against him were unsubstantiated. We do not agree.

After Molina testified for the state, she was called as a witness for the defendant, who sought to question her about an October 4, 2002 letter she sent to him stating that the department of children and families found the allegations of sexual abuse against him to be unsubstantiated. The state objected on relevance grounds. Out of the jury's presence, Molina explained that the allegations against the defendant were labeled "unsubstantiated" because the department of children and families, which pursued allegations only against caretakers, had determined that the defendant was not a caretaker. Concluding that the letter was irrelevant, the court sustained the state's objection.

As we have stated: "The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Lindstrom*, supra, 46 Conn. App. 818. In this case, the court did not abuse its discretion. First, it allowed the defendant his offer of proof as to the letter and testimony in question. The jury was excused so that the court could hear defense counsel question Molina.[14] Second, it was defense counsel, and not the

---

[14] Molina's testimony was as follows:

"[Defense Counsel]: Subsequent to that, you sent a letter to [the defendant] informing him that the allegations of sexual abuse are unfounded—or—unsubstantiated?

court, who terminated the defendant's questioning of Molina. The court stated: "I sustained the state's objection to the last question asked. [Defense counsel], do you have any other questions?" Defense counsel answered: "Not of this witness." Contrary to the defendant's claim, the court allowed him ample opportunity to elicit information, including exculpatory evidence, from Molina. The court also allowed the defendant to mark the letter in question an exhibit for identification in order to preserve his record.

It is clear to us that the investigation undertaken by the department of children and families, of which the letter in question was but one piece, targeted caretakers only. As such, the court properly determined that the letter was irrelevant to the criminal charges against the defendant. We find no abuse of discretion in the court's decision to exclude from evidence the letter in question.

## V

The defendant's final claim is that the court improperly denied his motion for a judgment of acquittal and his motion for a new trial. Specifically, the defendant contends that the court should have granted these motions because there was insufficient evidence to support his conviction of sexual assault and risk of injury to a child. We are not persuaded.

Asserting at trial that the totality of the evidence would not permit a finding of guilty by the jury, the defendant made an oral motion for a judgment of acquittal, which the court denied. After the trial, the defendant filed a motion for a judgment of acquittal and a motion for a new trial, claiming that the state failed to proffer

"[The Witness]: We did that because at the time, we [could] not substantiate against a person who is not legally responsible for the children.

"[Defense Counsel]: So, if he committed the crime and he molested the girls, you still say it's unsubstantiated?

"[The Witness]: It's a criminal matter. He was not in the caretaking role."

sufficient evidence against him to justify the jury's verdict. The court also denied these motions. On appeal, the defendant maintains that his motions for a judgment of acquittal and for a new trial should have been granted because the state failed to prove beyond a reasonable doubt that he was guilty of the crimes charged.

"When a verdict is challenged because of insufficient evidence, the issue is whether the jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. . . . Appellate analysis of a claim of insufficiency of the evidence requires us to undertake a twofold task: [w]e must first review the evidence construing it in the light most favorable to sustaining the [jury's] verdict. . . . We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt . . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." (Citations omitted; internal quotation marks omitted.) *State* v. *Avis*, 209 Conn. 290, 308–309, 551 A.2d 26 (1988), cert. denied, 489 U.S. 1097, 109 S. Ct. 1570, 103 L. Ed. 2d 937 (1989). "[T]he issue is whether the [trier] could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Barkal*, 8 Conn. App. 313, 315, 512 A.2d 972, cert. denied, 201 Conn. 812, 517 A.2d 630 (1986).

Though labeled as a challenge to the sufficiency of the evidence, this claim rests on an assessment of the

witnesses' credibility. There was sufficient evidence at trial to support the jury's finding in this case. In addition to the defendant's confession, K and E testified and were cross-examined. "Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the [finder] of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Liborio A.*, 93 Conn. App. 279, 284, 889 A.2d 821 (2006).

The jury reasonably could have believed K's and E's testimony and disbelieved the defendant's testimony that his confession was false. Consequently, the jury could have found the defendant to be guilty beyond a reasonable doubt as charged. Because the jury had before it ample evidence to find the defendant guilty on the ten counts of the information, we uphold the court's denials of the defendant's motions for a judgment of acquittal and for a new trial.

The judgment is affirmed.

In this opinion the other judges concurred.